# CHARLESTON.

## STATE *v.* GOODWIN.

(*JUDGE GREEN, absent.)

Submitted January 22, 1889.—Decided February 16, 1889.

1. EVIDENCE—WITNESS—IMPEACHMENT.

To impeach a witness by proving statements of his on another occasion inconsistent with or contradicting his statements on the trial, the statements must be material to the case, not collateral. (p. 181.)

2. EVIDENCE—WITNESS—IMPEACHMENT.

If the statements be collateral to the case and be drawn out on cross-examination and not in chief, the party drawing them out is bound by the answer and can not introduce evidence to contradict it. (p. 181.)

3. EVIDENCE—WITNESS—IMPEACHMENT.

Before such evidence to impeach can be admitted, a foundation must be laid by an examination of the witness touching the fact of his having made such statements. (p. 182.)

*J. F. Laird, J. Hutchinson* and *W. C. Mann* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

BRANNON, JUDGE:

This is a writ of error to a judgment of the Circuit Court of Wood county sentencing James Goodwin to the penitentiary for two years upon an indictment against him and John Freed for breaking into a spring-house of J. A. Murray with intent to commit larceny and committimg it. The State introduced evidence to show, that the spring-house had been broken into, and some butter, some milk, a crock, a china dish and a china saucer stolen and carried to a houseboat lying in the Ohio river, occupied by John Freed with his family, James Goodwin and his wife and children and Richard Goodwin and his wife; Freed occupying one end,

---

*On account of illness.

the Goodwins the other; and that some of the butter, the dish, the saucer and some milk were found on this boat. The breaking occurred in the night. On the trial Mrs. Frances Freed was a witness for Goodwin, who was tried alone, and her evidence in chief was as follows:

"I am the wife of John Freed. James Goodwin, my little son, and my husband left the boat about sundown, to go down to the fish-line. I was there when they returned home about dark. James Goodwin brought two rolls of butter. His wife gave me one of the rolls next morning. I recognize this meat-dish. We have owned it for some time. I was on the boat when Mr. Beckwith searched it. They got parts of two rolls of butter, this meat-dish and two saucers. They found about one pint of milk, which was in a bowl. They found no butter except the two rolls." On cross-examination she stated: "My husband did not leave the boat that night. James Goodwin and my husband returned about eight o'clock or half past eight. Jim reached the butter to his wife. I saw no milk. They had no milk with them, when they came back. I sent my little boy after milk for my baby. I don't know from whom he got it. He would go and get it as I wanted it."

Prisoner claimed and stated, that he left the boat with the boy and Freed to go to a fish-line, and his wife had given him some money, telling him to buy some meat or butter, and while gone from the boat he met a man, who sold him two rolls of butter of about one pound each for fifty cents, which he took to the boat.

The State, on cross-examination, asked Mrs. Freed, whether she had a conversation with Lucy Smith, and whether she did not tell her, that she (Freed) had said to her husband, after he and Jim Goodwin came back that night with the butter, that "that was a dang big lot of butter for fifty cents," and that he had told her to hush; that he did not buy the butter, but that Jim Goodwin and the little boy went out and got the butter and milk while he watched the skiff; to which question the prisoner objected, but the court allowed it, saying it was proper in order to lay a foundation to impeach the credibility of the witness in regard to facts testified to by witness in chief and for no other purpose. The witness

stated, that she had never had any such conversation with Lucy Smith. The state then asked her, if she did not tell Lucy Smith in the presence of Mrs. Rider, that those damned Goodwins had got her son Charlie drunk to make him tell, and that Jim Goodwin and Dick Goodwin were going to turn State's evidence and get out, and then send her husband to the penitentiary; and whether she did not say in the same conversation, that her husband was an innocent man, and that that damned Jim Goodwin had left her husband in charge of the skiff, and that Goodwin had taken her son and gone and stolen the butter and milk, and that her husband had nothing to do with it, and that she thought they ought to punish the guilty, and let her husband go.

Prisoner objected to the question; but the court allowed it, on the ground that the question was proper to lay ground to impeach Mrs. Freed, as it went to credit of witness, but for no other purpose. The witness then emphatically denied, that she ever had any such conversation with Lucy Smith.

The State then asked her, if she did not have conversation with Mrs. Rider in regard to her troubles, and if she did not state, that Jim Goodwin and Dick Goodwin were going to turn State's evidence and send her husband to the penitentiary, and if she did not say to Mrs. Rider, that her husband was innocent, and that nigger, Jim Goodwin, and her son Charlie stole the butter and milk; and if she did not at the same time state, that she dropped the crock the milk came in into the river, and it was a good thing that she did; that she could prove the dish was hers, and Mrs. Goodwin would claim the saucer, and they could not have the crock there in evidence against them in court.

The prisoner objected, the court allowing the question for the same reason stated above, and prisoner excepted. The witness, Mrs. Freed, answered that she had never made any such statements to Mrs. Rider.

The State introduced Lucy Smith, who stated that Mrs. Freed came to her house crying and in great trouble and said, they had been getting Charlie drunk, and that they were going to get him into trouble; that her husband was innocent; that Jim Goodwin had stolen the butter and milk; that when they came home that night she called her husband

to one side and said: "That's a danged lot of butter to get for fifty cents," and that she was afraid she would get into trouble; that her husband then told her, that he did not buy the butter or milk, but that Jim Goodwin and Charlie had gone and got the things, while he watched the skiff; that she (Mrs. Freed) said they threw the milk-crock into the river, and they could not find anything to hurt them much; that Mrs. Goodwin claimed the china saucer as hers, and she (Mrs. Freed) would prove the other dishes were hers; that the crock was out of the way, or they would have it in evidence against them; but she heard Jim and Dick Goodwin were going to turn State's evidence, and send her husband to the penitentiary.

Prisoner objected to this evidence, but the court allowed it for the purpose of impeaching and contradicting her as to her testimony in chief, and for no other purpose: and prisoner excepted.

The State introduced Mrs. Rider, who stated she was at Lucy Smith's and heard the talk between them; that in a day or two she went down to see her (Mrs. Freed); that she told her all her troubles; that she said they had brought the butter and milk to the boat, but her husband had nothing to do with it; that Jim Goodwin and her boy had gone and got the things, and her husband did not leave the skiff; that they had thrown the crock into the river, but that Jim Goodwin had stolen the things, and he and Dick were going to turn State's evidence and send her husband to the penitentiary.

. Prisoner objected to this evidence. The court allowed it, saying it was proper to impeach Mrs. Freed as to facts testified to by her in chief.

The prisoner asked but was refused the following instruction, for which he excepted: "The jury are instructed, that the testimony of Mrs. Lucy Smith and Mrs. Rider in regard to the conversation with Mrs. Frances Freed, in the absence of James Goodwin is not evidence of any fact mentioned by them and only relevant as to the credibility of Mrs. Freed, and can not be considered as proving any fact bearing upon the guilt of the defendant."

Lucy Smith's evidence is not admissible. Her statement,

that Mrs. Freed said, her husband was innocent, and that Jim Goodwin stole the butter and milk, was simply Mrs. Freed's expression of opinion. Her statement, that Mrs. Freed said, that, when they returned to the boat that night, she called her husband aside and said—"That's a danged lot of butter to get for fifty cents "—is not admissible. True, Mrs. Freed stated in her evidence, that Goodwin brought to the boat two rolls of butter, but she did not say, whether they were large or small, whether one pound each, or whether they would make up the quantity lost. They might have been large,—sufficient to make up the quantity. Here was no clear contradiction of her own evidence. Mrs. Freed's statement to Lucy Smith, that her husband responded, that he had not bought the butter or milk, but that Jim Goodwin and Charlie had gone and got the things, while her husband watched the skiff, was improperly admitted, because it was simply a declaration of Freed in the absence of the prisoner after the commission of the act; and, were Freed and Goodwin co-conspirators, the declaration of one made after the consummation of the act would not be admissible. 1 Greenl. Ev. § 111.

To impeach a witness by showing, that on another occasion he made a statement contradicting one made on the trial, that statement must relate to a matter material to the case,—must concern a fact involved in the evidence. There was not and properly could not have been involved in the case or in the evidence given any question, as to what Freed said as to the transaction after its consummation. The witness had stated nothing in chief to make it fall under the rule of *Forde's Case,* 16 Gratt. 547, that a witness may be impeached as to a matter, though collateral, if the statement be made in chief; nor could the State have introduced, to support the issue on its side as evidence independent of impeachment purposes, proof of the declaration so made by Freed; and for that reason it could not be let in to contradict a witness as to this collateral and irrelevant matter; for when a witness is cross-examined on a matter collateral to the issue, his answer can not be subsequently contradicted by the party putting the question. The test of whether a fact inquired of on cross-examination is collateral, is this:

Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea? This limitation however applies only to answers on cross-examination. It does not affect answers to the examination in chief. Whart. Crim. Ev. § 484; *Forde's Case*, cited above; *Nuckols* v. *Jones*, 8 Gratt. 267.

There is in Lucy Smith's evidence other matter objectionable, and that is the language: "That she (Mrs. Freed) said they threw the milk crock overboard into the river, and they could not find anything to hurt them much; that Mrs. Goodwin claimed the china saucer, and she (Mrs. Freed) would prove the other dishes were hers; and that the crock was out of the way, or they would have it in evidence against them." This matter would, *per se*, be competent as inconsistent with her statements on the trial, and the general drift of her testimony of the prisoner's innocence, and particularly tending to contradict her statement that, when they returned to the boat, they brought no milk, and inferentially from other statements no dishes, by proving that she said the crock had been there, but was disposed of as evidence, and the presence of the dishes would be explained; but the objection is, that no foundation for this evidence had been laid by an examination of Mrs. Freed as to the fact of her having made such statements, which is indispensible. 1 Greenl. Ev. § 462; *Unis* v. *Charlton*, 12 Gratt. 484.

True, a foundation was laid as to a part of her statement, but not as to the particular part specified, which is separable from the other part. A foundation was laid as to this matter in examining Mrs. Freed as to her conversation with Mrs. Rider, but not in examining her as to her conversation with Lucy Smith. A foundation should be laid as to all the substantial or material matters, as to which it is proposed to contradict a witness, not merely a part of such matters, leaving a material part without the preliminary foundation.

Mrs. Rider's evidence as to the conversation in Lucy Smith's evidence is, for reasons stated as to the latter's evidence, incompetent. Her statement, that Mrs. Freed said, they brought the milk to the boat, is incompetent. Her statement, that Jim Goodwin and her boy went and got the things, is incompetent. Her statement, that they had thrown

the crock into the river, is admissible, but not her statement, that Jim Goodwin had stolen the things, and that he and Dick were going to turn State's evidence, and she thought they ought to send the guilty persons who stole the things. Mere opinion is not admissible in such cases.  The evidence so improperly admitted was calculated to injure the prisoner's defence.

The instruction refused, while not couched in very plain or accurate language, yet properly construed was unobjectionable, and as an additional guard against the misuse by the jury of the evidence of Lucy Smith and Mrs. Rider in applying it, not merely on the question of the credit of those witnesses, but to establish the main fact of the prisoner's guilt, should have been given ; but as the court had in admitting the evidence of these witnesses distinctly stated, that it was to be used only on the question of the credibility of Mrs. Freed, the judgment would not for that cause be reversed.

As to the motion for a new trial, because the verdict was contrary to the evidence, the case was tried by a jury and depended on the weight of testimony, credibility of witnesses and inferences and deductions from facts proven, of which the jury, not the court, were the proper judges ; and this Court will not set aside a verdict in such cases except where there is a plain deviation from right and justice, not in a doubtful case.  *State* v. *Cooper*, 26 W. Va. 338.  We could not for this cause set aside the verdict.

For reasons however above given the judgment and verdict are to be reversed and set aside, and a new trial awarded, wherein, if the same matters shall arise, the principles herein indicated shall be applied, and the cause is to be remanded to such Circuit Court for such new trial.

REVERSED.   REMANDED.