# Gallant *v*. The State.

## *Murder.*

(Decided June 16, 1910.—52 South. 739.)

1. *Homicide; Evidence; Motive.*—Where the trial was for murder caused by wrecking a house occupied by decedent and by the sister and stepmother of the defendant, evidence that the defendant entertained ill will towards his sister and stepmother, and that he believed that if he survived either of them he would succeed to the estate left by his deceased father, then in the possession of his stepmother, was admissible as tending to identify the accused as the guilty party.

2. *Same.*—Where the defendant by mistake killed the decedent when he intended to kill another party it was competent to introduce evidence of ill will borne by the deceased towards the third party.

3. *Same; Conduct of Accused.*—Whether or not defendant came to the scene of the crime promptly after knowledge of the event was a circumstance for the jury in determining the issue of guilt; as was whether or not defendant appeared nervous, and if so, whether the nervousness was from a consciousness of guilt in causing the death of the decedent by the explosion, or whether it was from a natural impulse inspired by such an event.

4. *Same; Extent of Injury.*—Where the charge was murder caused by an explosion partially wrecking the house in which decedent was, evidence of the extent and character of the injuries sustained by the wife of the decedent who was sleeping with decedent, was admissible to show the criminal purpose and reckless disregard of human life by the defendant.

5. *Same; Murder.*—Where the state had shown a mercenary spirit on the part of the defendant as to the property left by the defendant's deceased father, then in possession of the defendant's step mother, who lived in the house with decedent who was killed by an explosion partially wrecking the house, the court properly permitted the jury to consider such evidence and determine the truth from all facts.

6. *Same.*—One on trial for murder may not show, in an absence of an effort to show that another person committed the crime, where such other person stayed on the night of the tragedy although such other person was indicted for the offense.

7. *Trial; Argument of Counsel.*—It is not erroneous to permit the solicitor in argument to state his relation to organized society and his duty in the prosecution of the case.

8. *Witness; Impeachment; Accused.*—It was admissible to show that accused was intoxicated when he made statements ascribed

[Gallant v. The State.]

to him by the state's evidence as bearing on his credibility as a witness in the denial by him of such statement.

T. *Evidence; Track Dogs.*—To justify the proof of acts of dogs in trailing human beings it must appear that the dogs were trained to take and follow the scent of human beings.

10. *Same; Opinion Evidence.*—A witness testifying to the ability of a dog to take and follow the scent of human beings may give a comparison between the dogs in question and other dogs the witness has seen perform to illustrate his qualification from observation to give an opinion as to when a dog is trained to track human beings.

11. *Homicide; Killing by Mistake; Effect.*—A defendant who kills one by mistake when intending to kill another subjects himself to the same liability as if he had slain the person intended.

12. *Same.*—Where the killing was done by an explosion partially wrecking the house which was occupied by the decedent and the step mother and sister of the defendant towards whom the defendant entertained ill will, and it was shown that a room of the dwelling from floor to ceiling and roof was demolished and a large hole beneath the house made by the explosion, the facts that defendant's relation to the deceased was friendly, and that the purpose of defendant in causing the explosion was to cause the death of the sister and step mother, did not lessen the responsibility of the defendant, as the act which caused the death of the decedent was one greatly dangerous to human life and evidenced a depraved mind regardless of human life within the purview of section 7084, Code 1907.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Howard Gallant was convicted of murder and he appeals. Affirmed.

DANIEL COLLIER and R. H. SCRIVENER, for appellant. Counsel insist that the evidence tending to show ill will on the part of the defendant towards his sister and stepmother was not admissible for any purpose and in support thereof cite *Clark v. The State*, 78 Ala. 472; 2 Enc. of Evi. 737; Sec. 4198, Code 1907; *Page v. The State*, 61 Ala. 16; *DuBose v. The State*, 50 Ala. 139; *Raglan v. The State*, 125 Ala. 12; 17 Cyc. 242. It cannot be reasonably contended that proof of the training of the dogs was sufficient.—*Hodge v. The State*, 98 Ala. 10; *Simpson v. The State*, 111 Ala. 6; *Little v. The State*, 39 South 674; *Richardson v. The State*, 41 South.

82. The court erred in the admission of evidence as to prior difficulties and disputes between the defendant and his stepmother and sister.—*Hudson v. The State,* 61 Ala. 333; *Ryan v. The State,* 100 Ala. 105; *Gray v. The State,* 63 Ala. 66. The threat to kill one person was not admissible under an indictment charging the defendant with the murder of or assault with intent to murder another.—*Ogletree v. The State,* 28 Ala. 693; *Ford v. The State,* 71 Ala. 385; *Clark v. The State,* 78 Ala. 474; *Caddell v. The State,* 129 Ala. 57. The court erred in permitting the argument of counsel objected to.—*Cross v. The State,* 68 Ala. 482; *Hobbs v. The State,* 74 Ala. 39; *Childress v. The State,* 86 Ala. 87; *Dollar v. The State,* 99 Ala. 236.

ALEXANDER M. GARBER, Attorney General, for the State.

McCLELLAN, J.—About 2:30 a. m., February 24, 1909, a destructive explosion was set off beneath a house in which Charles Gallant, his wife, Mrs. Alf. Gallant, and Mrs. Talford had their abode, and in which they were then asleep. The house was greatly damaged, and Charles Gallant was killed, and his wife, who slept beside him, was painfully injured. Mrs. Alf Gallant and Mrs. Talford were uninjured, occupying as they did a room across the hallway from the room in which Charles Gallant and his wife were when the explosion occurred, and immediately beneath which (room) the explosive was set off. This house was before his death the abode of Alf. Gallant. His death occurred November 30, 1908, three months prior to the tragedy in question. He had two children then living, viz., Howard (the defendant) and Bessie, now Mrs. Talford, adults when Alf. Gallant died. His widow was their stepmother.

Charles Gallant, the deceased, was a cousin of the Alf. Gallant children.

Our statute (Code 1907, § 7084) provides that every homicide "* * * perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree. * * *" The corpus delicti was incontestably proven.

The only issue was the identification of the defendant as a guilty agent. This was undertaken by the prosecution, upon the theory that the defendane entertained ill will and malevolent purpose toward Mrs. Alf. Gallant and Mrs. Talford, or that he yielded in the act to a mercenary motive predicated upon the assumption that if he survived Mrs. Alf. Gallant and Mrs. Talford, or either of them, he would succeed in property rights in the estate of Alf. Gallant, deceased, not enjoyable by him while they lived, or that he entertained the vengeful purpose to prevent the enjoyment by Mrs. Alf. Gallant of the property, in whole or in part, claimed and possessed by her as the widow of Alf. Gallant, deceased, defendant's father. The evidence tending to identify defendant as a guilty agent was circumstantial. It of necessity required and took a wide range. Numerous objections by defendant were interposed to the reception of testimony tending to support the stated theory of the prosecution. These objections are entirely too numerous to admit of separate treatment in this opinion. Each one has been with great care considered, and no prejudicial error appears to have attended the rulings of the court in dealing with the great number of cir-

cumstances thus offered by the state, pointing to the conclusion, if the jury so found, that the defendant was motived, as stated, to commit and did have part, at least, in the commission of the crime charged in the indictment. If in point of fact the title of the widow to the property left by Alf. Gallant was not of such character as to cast the estate therein to defendant's advantage, if he survived her, did not, of course, render inadmissible evidence tending to show that defendant entertained a different, though erroneous, view— a view in accord with the prosecution's theory that mercenary motive, entertained by defendant, inspired the act resulting in Charles Gallant's death. The insistence for defendant that the doctrines of *Clarke's Case*, 78 Ala. 474, 56 Am. Rep. 45, have application to this case cannot be approved. There the homicide was the result of mistake in the identity of the intended victim; and this court announced the well-recognized principle that the killing by mistake of one not intended subjects the accused to the same accountability as if he had slain the person intended. It was further ruled therein that, where the mistake in identity was a fact supported by tendencies of the evidence, evidence of ill will entertained by the accused toward the person intended to be slain but who, because of mistake in identity, escaped, is admissible. The guilt of this defendant under the evidence in this record rests upon broader ground. Aside from anything else, the act causing Gallant's death was one "greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life." A room of a dwelling from the sills through the roof was demolished, a large hole in the ground beneath the house was forced by the explosion, and a part of the porch of the house was wrecked. That the force—its scope in effect—of the explosion may have been miscal-

culated or the point of location of the explosion may
have been the result of error in judgment if the death
of Mrs. Alf. Gallant and Mrs. Talford, or either, was
the purpose of the act, cannot mitigate the extreme haz-
ard of the act to all within the house or exculpate to
any degree the agent or agents committing the act. That
the consequences of such an act were not more direful
cannot avail to excuse the guilty agent or to mollify the
measure of that guilt.—*Washington's Case,* 60 Ala. 10,
31 Am. Rep. 28, and the statement of principle in
*Lewis's Case,* 96 Ala. 10, 11 South. 259, 38 Am. St.
Rep. 75, take account of the principle which, we think,
applies to the case at bar.

The facts that defendant knew that deceased slept in
the room beneath which the explosion was set off, that
their relations were amicable and intimate, that he
knew where Mrs. Alf. Gallant and Mrs. Talford slept,
across the hallway from the room in which the deceas-
ed slept, were, of course, considerable by the jury in
determining the guilt vel non of the defendant, in de-
termining whether he had part in the act killing his
friend, and not physically harming the two women
toward whom, the evidence tended to show, he enter-
tained ill will, if not evil purposes.

It is a condition precedent to the admission of evi-
dence of the acts of dogs in trailing human beings that
the dogs in question were trained to take the scent of
human beings.—*Hodge v. State,* 98 Ala. 10, 13 South.
385, 39 Am. St. Rep. 17. While the evidence showing
the qualifications of the Lucile dogs was not as full as
it might have been, yet we cannot pronounce the recep-
tion of the evidence by the court as erroneous. Nor is
there merit in the insistence of counsel for appellant
that a witness was allowed to institute a comparison
between the Lucile dogs and others he (the witness)

had seen perform. The statement of the witness in this connection went to show his qualification from observation to have and entertain an opinion as to when a dog was trained to track human beings, and did not involve a comparison of the Lucile dogs and others, as was the case on *Simpson's Trial,* 111 Ala. 6, 20 South. 572. The court excluded from the jury by charge the evidence of the acts of the Bessemer dogs.

Evidence of the conduct of the defendant in coming to, at what hour, and about, the scene of the tragedy, was well admitted. His place of abode was not distant. His kinship or relation to those in the damaged house was to some quite close—to others, more remote. To the deceased he was shown to have been certainly most friendly. Whether he came to the scene promptly after knowledge of the event was a circumstance properly considerable by the jury in determining the issue of his guilt. Whether he appeared nervous, and, if so, whether that indication of excitement or disturbance proceeded from a consciousness of guilt or from the natural impulse such an event would inspire, were matters for admission to and consideration by the jury.

The evidence tending to show that defendant was intoxicated upon the occasion when he was said to have made statements pertinent to the ill will ascribed to him by the evidence for the state was properly admitted as bearing upon his credibility as a witness in the denial by him of the statements attributed to him while so intoxicated.

The extent and character of the injury suffered by Mrs. Charles Gallant was relevant to show the scope and effect of the criminal act producing her husband's death while he slept beside her. The volume of the unlawful force put in motion was a pertinent fact reflect-

[Gallant v. The State.]

ing the criminal purpose and reckless disregard of life to which we have before referred.

Those features of the evidence tending to show a mercenary spirit, on the part of the defendant, in respect of the property left by his father upon his decease—to show his contentions in reference thereto—his acts in that regard, were properly allowed to go to the jury for their consideration in the premises. They may have consisted with righteous motives, but it was the jury's province to find the truth from all the facts and circumstances.

Troy Kennedy was not on trial, though he had been indicted for the offense of which the defendant now stands convicted. Where Kennedy stayed on the night of the tragedy was obviously immaterial when offered to be shown by the defendant. It was not an effort to elicit evidence tending to show that another committed the crime.—*McDonald v. State*, 165 Ala. 85, 51 South. 629.

We see no error in the refusal to exclude the argument of the solicitor. It but stated his relation to organized society, and his duty in the premises.

No judicial error appearing, the judgment is affirmed.

Affirmed.

SIMPSON, ANDERSON, and MAYFIELD, JJ., concur.