# CHARLESTON

PETERSON v. PAINT CREEK COLLIERIES CO.

Submitted February 16, 1911. Decided November 19, 1912.

1. MASTER AND SERVANT—*Injuries to Servant— Mining Regulations. —Failure to Perform.*

   If a coal mining company, having employed a mine boss in compliance with the statutory requirement, oust him from the discharge of his duties, respecting the care of the roof of the mine and maintenance of its safety, or relieve him therefrom and undertake the performance of such duties itself, and then permit such roof to remain or become unsafe and dangerous, and an employee is injured by a fall of slate or stone therefrom, the negligence, if any, causing the injury, is that of the company, not the mine boss, and the former is liable. (p. 338).

2. SAME—*Injuries to Servant—Coal Mining—Fall of Roof.*

   A coal mining company is liable for injury to an employee by a fall of slate or stone, caused by its failure to furnish the mine boss machinery and materials, necessary to remove such dangerous slate or stone or make it secure, upon notice of his inability to do so for lack of such facilities and his demand therefor.   (p. 338).

3. SAME—*Injuries to Servant—Mining—Defective Roof—Notice.*

   Mere notice from the mine boss to the operator of a defect in the roof of the mine and ignorance thereof on the part of an employee, injured by such defect, are not sufficient to impose liability upon the operator for the injury.   (p. 339).

4. SAME—*Injuries to Servant—Defective Coal Mine—Notice— Failure to Provide Facilities to Remedy Defect—Pleading.*

   In a count to charge a coal mine operator for failure to comply with requisitions of the mine boss for machinery and materials to remedy a defect, it is not sufficient merely to allege notice by the mine boss of his inability to remedy it, since both operator and mine boss continue under legal duties after such notice.   (p. 339).

5. SAME—*Injuries to Servant—Coal Mining—Notice to Operator.*

   In an action against a mining company for an injury, occurring while a certain mine boss was in charge of the mine,

proof of ouster of a former mine boss by the operator, or usurpation of his powers, or of non-compliance with his requisitions for machinery and materials, will not alone sustain a verdict for the plaintiff, nor justify the giving of instructions, authorizing in any sense a finding of liability on the part of the company.  (p. 344).

6.  EVIDENCE—*Witnesses—Admissions of Servants—Res gestae—Cross Examination.*

Extra-judicial subsequent admissions of a mine boss, as to requisition upon his employer for machinery or materials for remedy of defects, or an undertaking on the part of the employer to remedy the same, not constituting a part of the *res gestae*, are inadmissable in an action against the employer for an injury to an employee, and his denial of such admissions, on cross-examination, cannot be contradicted by way of impeachment, unless such admission or denial thereof was a subject of his testimony in chief.  (p. 344).

Error to Circuit Court, Kanawha County.

Action by Marion Peterson against the Paint Creek Collieries Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Watts, Davis & Davis,* for plaintiff in error.

*C. W. Osenton, Ben D. Koontz,* and *Chas. E. Hogg,* for defendant in error.

POFFENBARGER, JUDGE:

Marion Peterson recovered a judgment for $15,000.00 against the Paint Creek Collieries Company, in the circuit court of Kanawha county, as damages for loss of an arm, alleged to have been caused by the negligence of the defendant. He was a motorman in the employ of the company and the arm was injured by a fall of stone, slate or shale at a place near the mouth of the mine while he was coupling cars.  Shortly after the injury, it became necessary to amputate the arm in order to save his life.

The seven counts of the amended declaration, a demurrer to which and each count thereof was overruled, proceeds upon two theories, the assumption of the duties of the mine boss by the company itself through its manager, and failure of the defendant to supply timber and materials for shoring up the roof of the mine at the place at which the accident occurred,

so as to make it a safe place in which to work, after notice of its defective and dangerous condition. The first, third, fifth and sixth counts proceed upon the first theory, and the second, fourth and seventh upon the other. Those of each class vary somewhat in the mode of statement, but their purpose is to fix liability on the same ground. The first says the manager of the company examined the roof. of the main entry at the place at which the plaintiff was injured and found it loose and liable to fall upon any one passing thereunder "and undertook himself in the place and stead of the mine-boss of said mine to have said danger remedied"; the third that the mine boss "gave notice to the defendant of the dangerous condition of the roof of said mine in a place thereof at or near the drift-mouth thereof, and at the point or place where plaintiff was subsequently injured, and his reliance on the defendant to repair and put into a safe condition said point or place in said roof, which consisted of dangerous masses of rock, slate, earth, etc., insecurely attached to the roof thereof, and liable to fall at any moment, which duty was assumed by it, then and there and retained by it up to and including the happening of the event of the injuring of the plaintiff"; the fifth that the manager or agent, finding the place in the roof of the main entry, within a few feet of the drift-mouth, the place at which the injury occurred, in a bad condition and dangerous because liable to fall, "undertook and did assume charge and control thereof in the stead and place of the mine boss of said mine, and completely ousted him from any work at said place relating to said defect in said roof aforesaid, and all responsibility as to its condition, and as such manager or agent thereof overlooked the necessity of erecting props or supports at such point"; and the sixth that the manager examined the roof at the point in question "and found the same loose and in a condition liable to fall upon any one passing thereunder, and could have by the exercise of reasonable care in inspecting the same and acting on the knowledge thereby disclosed, have kept said passageway reasonably safe for plaintiff and others."

The second count charges bad condition of the place and that the mine boss reported to the operator his inability to comply with his duties, imposed by the statute, respecting measures .

of safety of the haulway and failure of the operator to take such action as was necessary, although a space of time intervened between the notice and the injury sufficient to permit the taking down of all the bad roof or such other measure of safety as was necessary; the fourth, that the mine boss made a requisition or demand upon the manager of the company for timbers and material to be used to support a place in the roof at or near the point at which the injury occurred, which the mine boss had considered dangerous, and that the manager had promised to supply them; and the seventh, that the company negligently permitted the roof of the haulway of the main entry at the place of the injury to become unsafe and dangerous, which the mine boss was unable to remedy because the defendant failed to furnish suitable props, caps and timbers to secure the loose coal, slate and rock, and that the mine boss notified the defendant of the dangerous condition of the haulway at that point and of his inability to remove the loose coal, slate and rock or safely to secure the same so as to prevent danger, and also that he did not have the necessary props, caps and timbers with which to do so, whereupon it became the duty of the defendant either to remove the loose coal, slate and rock, if practicable, or if not, to make the same secure or provide suitable props, with which the mine boss could have done so. These allegations were accompanied by averments of breaches of the duties alleged.

The third and sixth counts, showing no more than notice of the defective condition of the roof by the mine boss to the defendant, ignorance of this condition by the plaintiff and failure of the defendant to remedy the defect and consequent injury to the plaintiff, fails to show any ground of liability, since the statute makes it the duty of the mine boss to keep the haulways and working places in a safe condition, the mine owner furnishing the materials of course. They charge no neglect of duty on the part of the owner in this respect, nor show any demand or requisition for materials or any knowledge of the lack thereof on the part of the owner. The sixth avers defendant's knowledge of the defective condition of the roof at a time some weeks prior to the injury and, upon that, charges duty to exercise reasonable care in inspecting the place and keep the passage

way reasonably safe. This was the duty of the mine boss, and, for aught that is alleged in this count, the manager was justified in assuming that he would remedy the defect. No requisition or demand for materials or tools, nor any lack of the same is averred. The second is equally defective. The mine boss's notice of his inability to remedy a defect does not absolve him from further duty. It was still incumbent upon him to do the work or cause it to be done, if the operator furnished the necessary machinery, labor and materials. As to whether the operator furnished them, the count is silent. Its purpose is, upon such notice, to devolve all duty in the premises upon the owner, contrary to the express terms of the statute.

To first and fifth, charging usurpation of the duties of the mine boss by the operator and the exclusion of the former from his duties and functions in the mine stand upon a different footing. Under the statute, the owner or operator of a mine is absolved from certain duties and liabilities by his employment of a mine boss. In the operation of a mine without a mine boss, his status is that of an ordinary employer of labor and he remains subject to that general mass of law defining the rights, duties and liability, incident to the relation of master and servant. If, having employed a mine boss as the law requires, he oust him from the duties devolved upon him by the statute and undertakes to perform them himself, he stands logically and practically in the same situation as if he had not employed him at all. He does that which the statute forbids and fails to obey its command as to those things which he assumes to do in the place of the mine boss. Under such circumstances, the protection of the statute cannot be reasonably invoked, because the relation does not exist. It requires compliance with the statute in substance and effect to confer upon the mine boss the independence and superiority, accorded to him by the decisions in *Bralley* v. *Tidewater &c. Co.*, 66 W. Va. 278, *Squilache* v. *Coal & Coke Co.*, 64 W. Va. 337, and other cases cited in the brief for the plaintiff in error, the doctrine of which is not at all questioned or impaired by this conclusion. As to these counts, we are of the opinion that the demurrer was properly overruled.

The fourth and seventh counts, charging notice of the defect,

inability to remedy it on account of lack of materials, and demand for the same and non-compliance therewith, seem to make a clear case of negligence on the part of the operator under the express terms of the statute, making it the duty of the operator or his agent, under such circumstances, "to at once attend to the matter complained of by the mine foreman, so as to enable him to comply with the provisions hereof, if the same can be practically done." Against this view nothing is urged except the general rule of non-liability, declared in so many cases for failure of duty on the part of the mine boss only. In every case of the application of this rule, the court has carefully distinguished between statutory duties of the operator and those of the mine boss. In no instance, has that rule been permitted to absolve the former from liability for injury resulting from his failure to do anything required of him. So we think these two counts are clearly good.

The evidence to sustain the two theories of liability, set forth in the declaration, goes back in date more than one month before the occurrence of the injury. None of it indicates usurpation of the powers of the mine boss in charge at the date of the injury nor any ouster or exclusion of that official by the operator or its agent. Neither is there any evidence of notice by that mine boss to his employer of his inability to remedy the defect in question or demand by him for machinery or materials necessary to enable him to remove or remedy the same. Evidence was adduced, tending to prove exclusion of a former mine boss or usurpation of his powers by the defendant's manager and notice to the latter of the former's inability to remedy the defect and a promise on the part of the manager to do the work himself, or cause it to be done, upon which the mine boss relied as matter of excuse for his failure to do so. This occurred in December, 1907, when one Parsell was the mine boss. On the last day of January or first day of February, 1908, Parsell ceased to be the mine boss and one Edward Morris took his place. Thereafter, on the 3rd day of March, 1908, the plaintiff was injured by the falling of rock or slate from the roof. As to the character of the defect, whether latent or apparent or discoverable by inspection, there is much conflict in the testimony, the defendant claiming the rock which fell was

what is known among miners as a "pot" or "kettle bottom," supposedly a petrified stump imbedded in the shale or slate so firmly as to give no evidence of its presence when the roof is sounded, but falls by reason of exposure to the air; and the plaintiff claiming the substance which fell was ordinary slate or shale. Not a particle of evidence, tending to prove any interference with Morris's powers and duties by the manager of the defendant company or any other representative thereof, after he entered upon the discharge of his duties, is disclosed by the record. There is considerable evidence tending to prove a defective and dangerous condition in the roof of the mine, both before and after the employment of Morris, and of the manager's knowledge thereof, and there is some testimony tending to impeach the testimony of Morris as to what he did to improve its condition by the removal of loose slate and the placing of posts and timbers in the mine. His competency, however, is not attacked either in the declaration or by the evidence.

In this conclusion we have not overlooked the effort to prove a demand by Morris upon Kern, the mine superintendent, for timbers and materials and Kern's promise to supply them and his failure to do so, by the testimony of the plaintiff and witness Koontz. On cross-examination, Morris was asked whether he had not stated to Peterson and Koontz that he had notified Kern, the superintendent, that the place was dangerous and required timber to fix it and make it safe, and that Kern had told him he would send the timber and have the place made safe. Morris said he had not, but that he had had a conversation with Kern about timbering the mouth of the mine after the injury of Peterson, because the workmen, after that, had become nervous about it,—"suspicious of it," to use his terms. He was also asked whether he had not, in the same conversation, said Kern had failed to supply the timber and he had himself gotten three posts and done the best he could before the accident. This Morris also denied positively. Peterson, in his rebuttal testimony, says Morris made the statements and had said he made the demand before the accident. Koontz also says he admitted he had notified Kern that the place was dangerous and Kern had said "Well, we will timber it," or words to that effect. If adimssible at all, this evidence contradicts Morris

and goes to his credibility, but it wholly fails to prove any demand upon Kern or any other managing agent of the company. Kern also positively denies that Morris ever made such a demand before the accident and no witness testifies of his own knowledge that it was made.  Neither Peterson nor Koontz pretend to say they heard Morris tell Kern what they say he admitted to them, and there is not a scintilla of evidence tending to prove the actual demand or notice.  It cannot be received to prove notice or demand.  *Morgan* v. *Insurance Co.*, 6 W. Va. 496; *Forde* v. *Commonwealth*, 16 Grat. 547; *Charlton* v. *Unis*, 4 Grat. 50.

As the case stood at the time, the evidence was inadmissible for the purpose of impeachment.  Whether Morris had given such notice or made such a demand was not in issue in the sense of evidence pro and con.  Morris had not then denied it and nobody had asserted it as matter of evidence.  The question propounded to him was not inconsistent with anything he had said.  At that time, it was wholly outside of any issue developed by the evidence, and brought before the jury a collateral matter in an effort to discredit the witness.  Under principles declared in *State* v. *Goodwin*, 32 W. Va. 177, the plaintiff was bound by Morris's answer as to his alleged admission and could not adduce evidence to contradict it.  Whether the cross-examining party would be entitled to prove the matter inquired of as a part of his case determines its character as to materiality.  If the cross-examining party cannot prove the matter as a part of his case it is collateral and not a subject of cross-examination for ground of impeachment, unless the witness has made it a subject of his testimony in chief.  *State* v. *Goodwin*, cited. Morris had made no reference to his alleged admission in his testimony in chief, and the plaintiff could not have proved it as a part of his case, for it was made, if at all, long after the accident and was no part of the *res gestae*.  To bind his principal, the declaration of an agent must have been a part of the *res gestae.*  *Hawker* v. *Railroad Co.*, 15 W. Va. 628; *Corder* v. *Talbott*, 14 W. Va. 277; Clark & Skyles on Agency, pp. 1029-31, secs. 468, 469.  Hence the trial court should have sustained the objections to the offers of proof of the admission.

Section 11 of chapter 154 of the Code makes it the duty of the

mine boss to keep a careful watch over the ventilating apparatus, the air-ways, traveling-ways, pumps and drainage; to cause all loose coal, slate and rock overhead in the working places and along the haulways to be removed or carefully secured so as to prevent danger to persons employed in the mine; and to cause sufficient props, caps and timbers, as nearly as possible of suitable dimensions, to be furnished for the places where they are to be used. Failure of duty on the part of the mine boss, respecting any of these matters, resulting in injury to any person working in the mine, imposes no liability upon his employer, because, under many decisions of this Court, so well known as to need no citation, he is held to be a fellow servant of the miners.

We are asked to re-examine and overrule this line of decisions, notwithstanding our recent re-examination thereof. Nothing is found in the brief, however, that has not been carefully and thoroughly considered. The variance of the terms of our statute from those of the Pennsylvania statute has been deemed insufficient to justify a construction different from that adopted by the Pennsylvania court, and the reasoning of the Indiana and Illinois courts, leading to a different construction, has been carefully considered on former occasions, and held insufficient, in our opinion, to warrant the overruling of the decisions, complained of.

At the time of the injury and for a month prior thereto, Morris was in charge of the mine as mine boss, unrestrained by any limitation upon his powers and unexcused from duty, so far as the evidence discloses, by any promise or undertaking on the part of the manager to perform any of such duties for him, if, indeed, such an undertaking or promise would constitute an excuse for his neglect to perform them. He was no party to the conversation between the manager and his predecessor, Parsell, in the preceding December, nor does he appear to have had any knowledge of it. He says he made daily and thorough inspections of the roof and took down a great deal of slate in dangerous places and put up props in others. As to some of this his testimony is contradicted by alleged admissions, but, if it is false, there is proof of no more than neglect of duty, resulting in injury to a fellow servant for which, under the law, there is no right of recovery against the employer.

A necessary sequence from this conclusion is the insufficiency of the evidence to sustain the verdict or justify the court in giving plaintiff's instruction No. 1, reciting hypothetically the danger, the mine boss's notice thereof to the employer, his lack of sufficient props, caps and timbers, the duty of the defendant to provide them or cause the place to be made safe, and the injury resulting, and requiring a verdict for the plaintiff, in the event of findings in his favor upon the questions submitted. As these vital contentions were unsustained by any evidence at all, there was no warrant in law for the giving of the instruction. To warrant an instruction there must be some evidence, tending in an appreciable degree to prove the essential elements of right of recovery. For the same reason, plaintiff's instructions No. 2, relating to the measure of damages, in the event of a finding for the plaintiff, (an impossibility for want of evidence), and No. 3, relating to the credibility of witnesses, (which did not properly arise at all since the evidence disclosed no issue), should have been refused.

Plaintiff, a motor runner, was injured while coupling cars in the absence of the man employed for that purpose. Defendant's instruction No. 1 would have told the jury he could not recover, because he was injured while away from his post of duty. The evidence shows it was customary for the motor runner to couple cars in the temporary absence of the car coupler. That alone justified the court in refusing the instruction. Defendant's instructions Nos. 4, 8 and 9, absolving the defendant from liability from injuries resulting from neglect of duty on the part of the mine boss, were improperly refused. Defendant's instruction No. 12, intended to advise the jury against right to find for the plaintiff on the theory of incompetency of the mine foreman was improperly refused, since there was no allegation of his incompetency nor any evidence tending to prove it. Defendant's instruction No. 14 was substantially the same as Nos. 4, 8 and 9 and should have been given. Defendant's instruction No. 15 denying right of recovery unless the jury should find the place at which the accident occurred unsafe when the defendant took charge of the mine and began to operate it, was properly refused, it appearing that the defendant had bought out another company sometime prior to the action. The instruc-

tion would have been misleading and was inapplicable. Defendant's instruction No. 17, reciting at length the purposes of the statute requiring employment of mine bosses, the reasons which impelled the legislature to enact it and its wholesome effect and operation, was properly refused because it was argumentative. Instruction No. 18, declaring a presumption of competency on the part of the mine bosses, Morris and Parsell, was properly refused, since their competency was not put in issue. Incompetency was not alleged. Instructions Nos. 20 and 16, the latter a modification of instruction No. 15, were properly refused for the reasons stated in disposing of No. 15, as at first presented.

Four of the ten special interrogatories asked for by the defendant were refused. The object of one of these was to obtain a finding as to when the roof of the haulway became unsafe, if at all, and what particular act of negligence was the proximate cause of the injury. Another asked for a finding as to whether mine boss Morris was relieved of any duty through the defendant's general manager. Another was in substance the same as the one just described. Another was intended to ask the jury whether plaintiff was injured by reason of the incompetency of the mine foreman. The last three were properly refused because they relate to matters as to which there was no issue. The first one was properly refused because of its generality and inconclusiveness.

On cross-examination of witness Lavender, the court sustained an objection to a question as to the character of fallen slate in the mine. This was matter as to which he had not testified in chief. Hence, he was defendant's witness and there was no showing as to what his answer would have been. Moreover, the defendant was not entitled to propound such a question on cross-examination. He should have introduced the witness as his own for the elicitation of such evidence. On the cross-examination of Parsell, the court sustained an objection to a question as to why he did not call on the defendant's agent in charge of timber and make him furnish such timber as he needed. In this, the court did not abuse its discretion. The witness had already repeatedly given his reason for not demanding timbers. The court struck out, over the objection of

the defendant, an answer of its witness, Veazy, describing the character of the roof around the place from which the rock or slate had fallen. This was non-prejudicial because the witness, in response to other questions, was permitted to testify to the same thing. Objections were sustained to two other questions propounded to Veazy. As the record fails to show what his answers would have been, we are unable to say the court erred in sustaining the objections. For the same reason, we are unable to say whether it erred in sustaining objections to several questions propounded to the witness Rogers. An answer of this witness as to the condition of the mine at the place at which the injury occurred about a year after the accident was excluded on the motion of the plaintiff. The remoteness in time justified the action of the court in this instance. An objection to a question propounded to the witness Morris as to whether Rogers, the manager, had given him any instructions that hampered him in the discharge of his duties was properly sustained, because the witness had repeatedly testified to his freedom in that respect. Besides, it does not appear what the answer would have been had the objection been overruled. The court permitted a witness for the plaintiff to testify, over the objection of the defendant, to his opinion as to whether the fallen rock was a kettle bottom. He was an experienced miner and necessarily had knowledge on that subject superior to that of the jury. Moreover, like other persons, he was no doubt unable to describe the fallen substance as fully and thoroughly as it appeared to him on inspection. Hence, we think the court properly permitted him to answer the question.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*