STATE OF WEST VIRGINIA

*v.*

FLETCHER HARTSEL RAMEY

(No. 13315)

Decided March 11, 1975.

542

*Charles T. Bailey* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Richard E. Hardison*, Deputy Attorney General, *Betty L. Caplan*, Assistant Attorney General, for defendant in error.

HADEN, CHIEF JUSTICE:

This is an appeal and supersedeas granted on the petition of Fletcher Hartsel Ramey who was convicted in the Circuit Court of Logan County for the felonious possession of forty-two counterfeit twenty-dollar bills with the intent to utter the same. *See*, West Virginia Code of 1931, Chapter 61, Article 4, Section 6.

When arrested, a lawful search revealed the counterfeit bills on Ramey's person. Although sharply conflicting, other direct evidence was introduced which proved to the satisfaction of the jury that he had purchased counterfeit bills at less than face amount on one or more occasion from another person under federal conviction for a similar offense. No evidence, however, was introduced at trial to demonstrate that the appellant had uttered or attempted to utter or pass the bogus currency.

The primary issue of this appeal is whether the trial court erred to Ramey's prejudice in permitting the State to introduce extensive testimony tending to prove that the appellant was intoxicated when arrested for possession of the counterfeit money. This testimony came into the trial when the State cross-examined Ramey after he had taken the stand in his own defense and when the State introduced further rebuttal testimony to the defendant's case.

Ramey contends here that the introduction of the intoxication evidence against him constituted proof of a separate, unrelated criminal offense, or impeachment of

his testimony on a collateral matter, either of which constituted prejudicial error. The State counters that such testimony was relevant and "was introduced to show that defendant had perhaps spent more money than he said he had, thereby tending to disprove his testimony on direct that he had found the counterfeit money after he had been in the Ranch House," a tavern located near Omar, Logan County. In other words, the State contends that the intoxication evidence was connected and tended to support the charge of the indictment that appellant possessed counterfeit money with intent to utter it.

The trial occurrences giving rise to this issue are as follow: In the course of Ramey's explanation of his defense that he had discovered the money on the front seat of his car, placed there by someone unknown while the automobile was parked outside the "Ranch House," he recounted that he had travelled extensively on the day of the arrest on business and social errands in Logan and Mingo Counties, and made stops at several restaurants and taverns. During the day, he said he had consumed two beers. When pressed on cross-examination, Mr. Ramey conceded that he had consumed the proverbial "approximately two beers" but then proceeded to specify that he had drunk only one beer at the Ranch House tavern and the second beer at the White Tower, an establishment at Henlawson, Logan County, where he was arrested. The matter of drinking was not pursued further on cross-examination. The State then adduced rebuttal evidence by re-calling the two arresting officers to the stand. These officers, Troopers Johnson and Allen of the Department of Public Safety, testified that when they arrested the defendant, and for a period of time thereafter, he appeared to them to be visibly drunk or intoxicated. Allen then gave testimony that he had induced Ramey into taking a breathalyzer test by challenging Ramey to prove that he was not drunk. Under these circumstances, Ramey appears to have consented to the conduct of that particular test. Trooper Johnson gave extensive testimony as to how the

breathalyzer test was conducted and the results of that test which demonstrated that Ramey's blood alcohol registered 17/100ths of 1% of alcohol content.

We note, parenthetically, that had this been a trial for a criminal offense charging an allegedly intoxicated person with the operation of a motor vehicle prohibited by *W. Va. Code* 1931, 17C-5-2(a), as amended, such alcoholic content in the blood would have been *prima facie* evidence that the tested person was under the influence of intoxicating liquor. We also note that Ramey was not subsequently charged with any driving offense warranting the introduction of such evidence against him, nor did the State adduce conclusory testimony premised upon this evidence that Ramey was drunk in fact. It left that inference to the jury. What the State did conclude, through the expert testimony of Corporal R. G. Barber, a chemist with the Department of Public Safety, was that a man of Ramey's size would have consumed approximately eight bottles of West Virginia beer necessarily to have caused a .0017 reading from the breathalyzer test, if such test had been conducted accurately.

Ignoring the accuracy of the test and its results, appellant contends that the mere introduction of the breathalyzer evidence against him in a criminal trial on a charge unrelated to those prescribed in *Code* 17C-5A is prejudicial error. We believe that contention has no merit. For the sake of argument, we would agree with appellant that the results of such a test or his refusal to submit to the test could not be used in trial against him, unless he was charged with a driving offense cognizable under Chapter 17C, Article 5A of the *Code.* Inasmuch however, as Ramey appeared to have consented to the test in this instance, we must judge its competence as evidence in this trial by determining whether it was purely collateral and inadmissible, or relevant and logically connected with the crime for which he stood trial, and therefore admissible. *See and compare, State v. Wade,* 14 N.C.App. 414, 188 S.E.2d 714 (1972). On this appeal all of the "intoxication" evidence, whether characterized as impeachment or rebuttal, will be so treated.

Article III, Section 5, of the West Virginia Constitution provides, *inter alia*: "Nor shall any person, in any criminal case, be compelled to be a witness against himself, . . . ." In elaboration of that fundamental right, *W. Va. Code* 1931, 57-3-6 provides, *inter alia*: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness on such trial or examination; . . . ." These provisions must be read in *pari materia. State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955). Once an accused voluntarily chooses to take the stand in the criminal case he can be compelled under the same statute, but with significant limitation, to give testimony against himself: "and if he so voluntarily becomes a witness he shall, as to *all matters relevant to the issue*, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; . . . ." (Emphasis supplied). So, an accused who voluntarily takes the stand in a criminal case may be compelled to give testimony against himself on cross-examination *only* "as to all matters relevant to the issue." The only judicially recognized exception to this statutory requirement of "relevancy" is that the State may cross-examine the accused as to whether he has been *convicted* of other felonies or misdemeanors, although such offenses may be unrelated to the matter at issue. *State v. Simmons*, 148 W. Va. 340, 135 S.E.2d 252 (1964); *State v. McMillion*, 127 W. VA. 197, 32 S.E.2d 625 (1944); *State v. Mullenax*, 124 W. Va. 243, 20 S.E.2d 901 (1942); *State v. Friedman*, 124 W. Va. 4, 18 S.E.2d 653 (1942); *cf., State v. Petlock*, 113 W. Va. 645, 169 S.E. 480 (1933). For a critical discussion of the breadth and effects of this rule's application, *see*, Note, 71 W. Va. L. Rev. 160 (1969). This exception is recognized for the sole purpose of testing the accused's credibility and, if a limiting request is made, the jury should be instructed that for this purpose alone, previous convictions are admissible on cross-examination against the accused. *State v. LaRosa*, 129 W. Va. 634, 641, 41 S.E.2d 121, 125 (1946). In this regard we note that

Ramey was cross-examined and he acknowledged that he had been convicted of a felony involving the theft of a "tire." The trial court properly instructed the jury that such question was asked solely to test the accused's credibility. As will be developed, we believe that evidentiary matter to be distinguishable from the issue of this appeal.

Comparatively, and often confused with the issue at hand, this jurisdiction also recognizes that a number of otherwise "collateral" matters involving convictions, charges and offenses may be admissible against the accused if they are demonstrated to be logically connected with and relevant to a material issue involving the offense being tried:

> "[T]he evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial." Part *syllabus* point 12., *State v. Thomas*, W. Va., 203 S.E.2d 445 (1974).

In its brief, the State urged that the "intoxication" evidence could be used against Ramey because it "could go to prove that he had passed some of the counterfeit money, thereby proving knowledge and intent." We do not apprehend the logic of that contention nor is it tenable when considered with the crime charged. The defendant was indicted with having possessed counterfeit currency with the intent to utter it. For that matter, we find no direct or circumstantial evidence in the designated record which would tend to prove that Ramey had uttered or passed any counterfeit money. The State cannot support the conviction upon the rationale of *Thomas* or its progenitors.

The character of the accused may also furnish the State with the opportunity to employ other criminal charges, offenses and convictions involving the defend-

ant against him. Where the accused takes the stand or produces witnesses who testify as to his previous good character in defense of the charge against him, he or they may be cross-examined on otherwise unconnected and irrelevant matters to demonstrate his bad character. *See, State v. McArdle*, W. Va., 194 S.E.2d 174 (1973) where the rule was recognized and the limitations stated as follows:

> " 'The State can not introduce evidence "not connected with the crime for which the accused is being tried, for the purpose of showing his bad character, *until the accused has first put his own character in issue by attempting to prove a previous good character.* " ' " (Emphasis supplied.) *Id.,* at 179 of the South Eastern Reporter.

Mr. Ramey did not put his character into issue in this case and the State did not contend that the "drinking" evidence was admissible for that purpose.

There is yet another wrinkle to the fabric. In a few jurisdictions it has been recognized that an accused may be cross-examined as to his intoxication at or about the time of the events about which he has testified. The rule, which permits impeachment of witnesses in this regard, is recognized in Virginia:

> "It is well settled that the testimony of a witness may be impeached by showing that he was intoxicated at the time of the occurrence of events about which he testified. (Citations omitted.) However, intoxication only bears upon his capacity for accurate observation and correct memory. Generally, the admissibility of the testimony of such a witness is within the sound discretion of the trial court." *Burnette v. Commonwealth*, 172 Va. 578, 579, 1 S.E.2d 268, 269 (1939).

In permitting the accused to be so impeached where his testimony was in sharp conflict with the State's witnesses on a material issue, the following cases are in accord. *Gallant v. State*, 167 Ala. 60, 52 So. 739 (1910); *Miller v. People*, 216 Ill. 309, 74 N.E. 743 (1905); *Tester v. Common-*

*wealth,* 229 Ky. 403, 17 S.W.2d 260 (1929); *Bouyer v. State,* 57 Okla.Crim. 22, 43 P.2d 153 (1935); *Russell v. State,* 84 Tex.Crim. 245, 209 S.W. 671 (1918). *See* annot., 8 A.L.R.3d 749, 775 (1966). In further reference to the *Burnette* case it is to be noted that *W. Va. Code* 1931, 57-3-6, *supra,* has been construed to subject a testifying accused to the rules of evidence pertaining to witnesses generally. *State v. Taylor,* 130 W. Va. 74, 86, 42 S.E.2d 549, 557 (1947) and *State v. Friedman, supra. See,* discussion in *States v. Riss & Co.,* 139 W. Va. 1, 15–16, 80 S.E.2d 9, 17 (1953). The admissibility of intoxication evidence to impeach the accused on his recollection of events which are in conflict and are material to the resolution of the issue of his guilt or innocence is an open question in this jurisdiction. We do not reach this precise issue on the record of this case, as it was not presented.

We think it is highly significant that the State did not introduce the intoxication evidence for the purpose of impeaching Ramey's testimony by attempting to denigrate the accused's memory or recollection of the events of the crime with which he was charged and later convicted. In reviewing that evidence, this Court is guided by the perspective previously recognized and applied in *State v. Thomas, supra,* in regard to the proof of collateral charges, offenses or crimes: "Such evidence will be considered strictly upon the ground of its relevancy to the purpose for which it is sought to be introduced." *Id.,* at 455, 203 S.E.2d 445, *supra. See also,* 29 Am. Jur. 2d *Evidence* § 321 (1967).

The introduction of the defendant's possible intoxication into the evidence of this case and whether such was reversible error resolves itself on the basis of whether such testimony was collateral or relevant. As was succinctly recognized in the case of *Allen v. Commonwealth,* 122 Va. 834, 94 S.E. 783 (1918):

> "The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case. *State v. Goodwin,* 32 W. Va. 177, 9 S. E. 85

[(1889)]; *State v. Sheppard*, 49 W. Va. 582, 39 S.E. 676 [(1901)]" *Id.*, at 786 of the South Eastern Reporter.

This is well-settled law in the Virginias. After reviewing the rules of admissibility of other crimes against the accused, we are led to the ineluctable conclusion that the proof of defendant's intoxication contemporaneous with his arrest for counterfeit bills in his possession, was absolutely extraneous and collateral to the elements of that crime and his culpability under the statute. At least since 1922, this Court has consistently held:

> "[T]he correct rule is that testimony as to collateral matters can not, whether given on direct examination or cross-examination, be contradicted for the purpose of impeaching the witness' credibility. This is supported by the great weight of authority." *State v. Price*, 92 W. Va. 542, 572, 115 S.E. 393, 405 (1922).

It is the policy of the law that matters which are truly collateral to the material issues of the case shall not obfuscate the main issues of the case or be introduced for the purpose of prejudicing the defendant by making him respond to a separate criminal charge; nor is such evidence admissible *per se* to prove that he is a person of bad conduct or character. Accordingly, as recently as 1964, this Court held in *State v. Simmons, supra,* the State is foreclosed from pursuing the following:

> "Where the defendant in a criminal case has been cross-examined on irrelevant, immaterial or collateral matters, his answers are binding on the cross-examiner, and such answers may not be contradicted." *Syllabus* point 1.

> "Where, in a criminal trial, the court, over the objection of the defendant, permits the State to ask the defendant a question, the effect of which is to accuse him of a crime other than that for which he is being tried, and the defendant denies the accusation, it is reversible error to allow the State to introduce testimony seeking to contradict the answer of the defendant." *Syllabus* point 2.

> "A person being tried for the alleged commission of a crime may not, on cross-examination, be accused of any crime other than that for which he is then on trial." *Syllabus* point 3.

On the record presented to this Court, we must reverse Ramey's conviction because he was prejudiced by the introduction of collateral crimes into his case.

Nevertheless, because the record may have been incomplete, we cannot say that the alleged intoxication may not be admissible for any purpose upon retrial. That remains for development. From what we do have before this Court, it must be observed that the volume of this evidence introduced against Ramey may have prejudiced him, if otherwise arguably admissible. Offers of testimony and objections and motions for exclusion of evidence of collateral crimes and charges are addressed to the sound discretion of the trial court. *State v. Thomas, supra.*

> "In the exercise of discretion to admit or exclude evidence of collateral crimes and charges, the overriding considerations for the trial court are to scrupulously protect the accused in his right to a fair trial while adequately preserving the right of the State to prove evidence which is relevant and legally connected with the charge for which the accused is being tried." *Syllabus* point 16., *id.*

The volume of evidence of otherwise collateral matters, proffered by the State for an authorized purpose presents a delicate "balancing" problem for the court. Although evidence of this type may be admissible for a limited purpose, the court must be careful to insure that its very extent or volume does not prejudice the accused by directing the jury's attention to the collateral matter. In addition to the concern expresssed by this Court in *Thomas*, the tactic of overloading the State's case with collateral matters has been forcefully condemned by the federal courts. *See, Spencer v. Texas*, 385 U.S. 554, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967); *United States v. Mastrototaro*, 455 F.2d 802, 803 (4th Cir. 1972); *Luck v. United*

*States*, 348 F.2d 763 (D.C. Cir. 1965). Accordingly, we are of the opinion that when this case is retried, evidence of Ramey's intoxication, if competent for any reason, should be introduced with caution, in limited quantities, and for a lawful purpose.

Since this case may be tried again, we speak to one other nonjurisdictional issue raised for the first time on this appeal. As such, we do not regard it as reversible error. This Court does not approve the cross-examination technique of the prosecutor who asked the defendant if three State witnesses who had testified in chief had lied in their testimony. This practice is to be condemned because, with his other burdens, it forces a defendant to characterize the testimony of other witnesses. In responding, the defendant must either admit the truth of the testimony of such witnesses given against him or, in effect, accuse such witnesses of perjury. Besides placing an unwarranted burden upon the defendant, the tactic invades the province of the jury. It is for that body to resolve the ultimate facts and to give credence and weight to the testimony of witnesses, on proper instructions of the court. *See, Plymale v. Commonwealth*, 195 Va. 582, 79 S.E.2d 610 (1954).

The case is reversed, the defendant is awarded a new trial and the cause is remanded to the Circuit Court of Logan County for retrial in accordance with the principles expressed in this opinion.

*Reversed and remanded.*