## CHARLESTON.

State *v.* Delmer R. Warner

(No. 6055)

Submitted November 20, 1928. Decided November 27, 1928.

410

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Delmer Warner, who was tried before a jury in the circuit court of Randolph county and found guilty of unlawfully and feloniously stealing two hundred pounds of wool of the value of $80.00, complains of the judgment entered on the verdict.

Mason Boggs, a farmer in Randolph county, owned a number of sheep. After the 1926 shearing, the wool was packed into five sacks of approximately two hundred pounds each, in all 1,006 pounds, and sometime prior to August 13th was sold to H. A. Kimball. Several days after that date Kimball stopped at the Boggs' barn and noticed that some of the wool was missing. A check in the weight disclosed that fifty pounds had been removed from each of four of the sacks, or a total of two hundred pounds. Whitecotton, a tenant on the Boggs' farm, also discovered that a large number of empty salt feed sacks were gone. After communicating with various buyers, it was found that a merchant named Smith had recently purchased approximately two hundred pounds of wool from Delbert Warner, and that the same had been brought to his store in salt feed sacks. An examination of the wool disclosed markings of tar, and red and blue keel, all of which means were used by Boggs for identification of his sheep, and the fact that the texture of this wool was identical with that produced from the Boggs' sheep. On this examination a small triangular block of wood was found in the wool. On its newest edge was found evidence of an old nail hole which had been sawed through when the block had been detached from a larger board. Evidence was introduced by the state to show that this block of wood came from the Boggs' barn, the same having been picked up from the cutting room floor with the wool when it was packed into bags. It was also shown that

the defendant and a cousin were seen driving from the former's home in Pendleton county toward the Boggs' farm (twelve miles distant) on the evening of the 13th of August, about 9:30 o'clock, and that the defendant sold the wool in question to Smith about eight o'clock on the morning following.

Defendant admits the sale of the wool to Smith, and introduced evidence to prove that he had purchased the same from his mother, brother and a cousin. However, the evidence of the latter parties as to how they had acquired the amount of wool alleged to have been sold to the defendant is at its best very weak. Defendant's presence in the vicinity of the Boggs' farm on the night of the 13th is to the effect that he was going to Gates Wood Switch (a point on a logging road) to meet his brother who was on his way from Morgantown. To support this contention he introduced a letter supposed to have been written by his brother. This letter stated that the brother would be at the aforesaid point on either the 13th or the 14th.

On cross-examination the State elicited information from the defendant to the effect that he had had some connection with a sale of wool to one Cooper prior to the admitted sale to Smith. He explained, however, that the wool belonged to Virgil Spoonogle, and that the latter had requested him to transport the wool in his car, and that the check in payment thereof, at Spoonogle's request, was made out in defendant's name. Spoonogle, who had previously testified, was then recalled by the State 'for further cross-examination and denied ownership in the wool, stating that he did not know to whom it belonged, but that defendant had asked him to accompany him to Cooper's store on that occasion. Defendant objected to this latter cross-examination, and on its completion moved to exclude the same, claiming that the sale to Cooper was purely of a collateral matter, and therefore not susceptible to such attack. The test as to whether the matter is collateral is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case. This limitation, however, applies only to answers on cross-examination. It does not affect answers to the examination in

chief. *State* v. *Goodwin*, 32 W. Va. 177; Wharton's Crim. Ev., § 484; *Forde's Case*, 16 Gratt. 547; *Nuckols* v. *Jones*, 8 Gratt. 267. All facts which tend either to sustain or impeach a logically pertinent hypothesis are admissible. Wharton's Cr. Ev., § 24; *Dean* v. *Com.*, 32 Gratt. 912. The State by its evidence showed that approximately two hundred pounds of wool had been stolen from the Boggs' barn; that the defendant sold within half a pound of that amount to Smith. Defendant introduced evidence that he had bought the two hundred pounds sold to Smith, and in an attempt to strengthen this theory stated that that was all the wool he bought that year, and that the only sale made by him was to Smith. Evidence tending to show that defendant had made other sales would amount to a direct attack on the defense. In other words, instead of accounting for an amount equal to that of the wool stolen, defendant would be called upon to account for the entire amount shown to have been sold by him. The matter inquired into was, we believe, a very material one. Such a line of examination was proper in this case, even though the defendant had not denied the particular sale to Cooper, for he had already stated that he had not made any other sales. The order of the introduction of such rebuttal evidence was a matter within the sound discretion of the trial court. *State* v. *Williams*, 49 W. Va. 221.

The four instructions given for the State deal with the value of circumstantial evidence as an element in ascertaining the truth of any issue; the possession of recently stolen goods; the value necessary to constitute a felony; and the province of the jury as to credibility of testimony. They are the usual instructions given in such cases, and we believe were properly applied to the instant case. *State* v. *Frady*, 172 N. C. 978; *State* v. *Powers*, 91 W. Va. 737; *State* v. *Roberts*, 50 W. Va. 427. It was not error to refuse defendant's Instruction No. 7 inasmuch as the proposition contained therein was substantially incorporated in his Instruction No. 6, which tells the jury in effect that the State relies upon circumstantial evidence, and in order to convict the defendant upon evidence based in whole or in part on circumstantial evidence, all of the circumstances from which the

conclusion of guilt is drawn and without which it cannot be drawn, and every essential circumstance necessary, must be established by full proof, and must be consistent with the hypothesis of guilt and exclude every other reasonable hypothesis of innocence.

Was the wool sold by defendant the Boggs' wool? Several witnesses for the State testified that the wool grown in the "Sinks", where the Boggs' farm was located, differed in texture from other wool in that section of the state, and that the texture of the wool bought by Smith was similar to that produced in the Sinks, and that in their opinion the wool came from either the Boggs' sheep or from other sheep in the same vicinity. Evidence was also introduced to the effect that Boggs was the only wool grower in that locality who used blue keel. But that is not all. The presence of the small block of wood in the wool sold by Warner plays a prominent part in connecting the wool up with that alleged to have been taken from the Boggs' barn. This block matched in every particular with the end of a board in a salt box in the Boggs' barn. Its grain was the same and the portion of the old nail hole showing on the recently sawed side of the block coincided with that portion of a nail hole on the board in the salt box. The salt box was under construction at the time of the shearing, and because of its presence at the edge of the clipping room the block might very naturally have fallen on the floor with the wool. How did this block get in the wool that the defendant sold if he bought the wool a few days before its sale from his mother, brother and cousin? Its presence, unexplained, proved to be his nemesis.

Why did he go out of his way to sell the wool to Smith, when he could have secured a few cents more on the pound at the stores closer home? Smith's store was thirty-five miles distant from the Boggs' farm. Then again, defendant does not show any substantial reason for his presence in the vicinity of the Boggs' farm (twelve miles from his home) on the night of the 13th of August. The letter of Lester Warner, requesting defendant to meet him on the 13th or 14th at Gates Wood Switch was introduced for the purpose of explaining this situation. Defendant states that that point

could be reached by going around by way of the Boggs' farm. However, the letter does not add much weight to the defendant's case, for the dates "13th" and "14th" as well as the post mark on the envelope showed evidence of having been changed. Why did he expect to find his brother at the Switch at midnight rather than at some other time? The trains on the logging road were admitted to be very irregular. The evidence of where he got the wool, as we have already noted, was very unsatisfactory. The only way that the mother can explain the possession of the quantity she sold her son, in view of the small number of sheep owned by her, was that each year she kept a part of the clip in order to have some wool on hands.

The defendant's guilt under all facts and circumstances was clearly a question for the twelve triers of the fact. Where the testimony, as here, depends upon the weight of the testimony or inferences from it, they are exclusively and almost uncontrollably the judges. *State* v. *Winans,* 100 W. Va. 418.

*Affirmed.*