STATE OF WEST VIRGINIA V. SHERMAN FRIEDMAN

(No. 9204)

Submitted January 14, 1942. Decided February 3, 1942.

*Jed W. Robinson, Wm. T. George* and *James C. Holt,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

The plaintiff in error, Sherman Friedman, was convicted in the Circuit Court of Taylor County of the statutory offense of sodomy and the prescribed sentence imposed. In prosecuting this writ, he relies upon seven errors he avers the trial court committed: (1) In not setting aside the verdict as contrary to the law and the evidence; (2) in admitting the testimony of a police officer and deputy sheriff concerning statements made to them by the accused while in the Taylor County jail; (3) in requiring the accused to respond to a question propounded on his cross-examination concerning a former conviction of a misdemeanor; (4) in permitting that question to be asked and requiring it to be answered when the character of the

defendant was not in issue; (5) in approving state's instruction number one defining the offense without including the emission of semen; (6) in giving state's instructions numbers two and three attempting to define reasonable doubt; and (7) in declining defendant's instructions eight and nine, the first dealing generally with the jury's deliberation and the second with the convictions of the individual juror, in effect, being the often discussed "hanging instruction."

We have carefully examined an unavoidably revolting record and shall attempt to fully discuss only what we regard as the essential question presented.

The lack of specificness in the first assignment robs it of consequence.

Point two is based upon a statement made by Deputy Sheriff Guth to the accused in the county jail of Taylor County on August 5th, the day upon which the accused was arrested the second time, the alleged offense having occurred August 2nd just before midnight, to the effect that it would be much better for the accused to state the truth concerning the occurrences with which he stood charged. According to the testimony of the officer, Friedman admitted the occurrence with the exception of having threatened or coerced the prosecuting witness to take part. Friedman denied having admitted his guilt to the officers, and yet insists that the statement he made to them was induced by their threat that otherwise the state would make a mountain out of a mole hill and "send him up" for twenty years. But conceding that the defendant's position is consistent and that he could have been coerced into making an admission that he emphatically denies, we see nothing that would coerce, intimidate or be unduly persuasive in stating to an accused that it would be better to tell the truth, that being what took place according to the testimony of the officers.

Points three and four are both predicated upon the same occurrence, and consequently will be discussed as a single question.

Prior to the enactment of the Official Code of 1931, West Virginia followed the minority rule which permitted an

accused to take the stand, and at the same time did not require him to answer questions concerning previous convictions. Including West Virginia, there were six states that did not allow this type of cross-examination, Massachusetts being one of them, where a previous conviction of an accused-witness, while not permitted on cross-examination, could be shown by record proof. The same rule obtains in Pennsylvania. In thirty-six other states and in the Federal courts previous conviction of an accused-witness could be shown either under the common law rule or by virtue of the statute.

For a statement of the Federal rule and the citation of Federal cases, see *Simon* v. *United States*, 123 Fed. 2d 80, a case that went to the Circuit Court of Appeals for the Fourth Circuit from this District.

The case of *State* v. *Webb*, 99 W. Va. 225, 128 S. E. 97, decided in May, 1925, is the most recent pronouncement of this Court on the question. The *Webb* case reaffirmed the definitely established West Virginia rule, although it does so in full recognition of the fact that the decidedly great weight of authority then permitted an accused who voluntarily took the witness stand to be examined affecting his credibility to the same extent as other witnesses.

When the *Webb* case and the previous West Virginia cases on the subject were decided, what is now Code 57-3-6, read as follows: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, at his or her own request (but not otherwise) be a competent witness on such trial or examination. * * *." Even when the section was limited to that language, the accused, in taking the stand, was not permitted to confine his examination by the state to the subject matter of his examination in chief, but could be asked upon cross-examination, or otherwise, concerning all matters relevant to the issue. *State* v. *White*, 81 W. Va. 516, 94 S. E. 972.

When the West Virginia Code of 1931 was adopted, the section under consideration was extended and enlarged to read as follows, the part in italics being the added language:

"In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, *with his consent* (but not otherwise), be a competent witness on such trial or examination; *and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by any one.*"

The revisers' note following this section refers to the fact that with the exception of the addition of the clause "as to all matters relevant to the issue," the material part of the addition is a verbatim copy of section 4778, Code of Virginia of 1919, and that the change is made with the purpose in mind of conforming the rule in West Virginia to what is spoken of in Wigmore on Evidence (2d Ed.), paragraph 2276 as "the better view."

Undoubtedly, it is a sound theory in arriving at the meaning of a statutory provision, the substance of which has for some time been in effect in another state and considered and construed by the courts of that jurisdiction, to carefully examine and regard as persuasive the construction adopted there, particularly the construction made a part of it before its enactment by the jurisdiction of the pending matter.

In 1923, the Virginia Supreme Court of Appeals, in the case of *Smith* v. *Commonwealth,* 136 Va. 773, 118 S. E. 107, had this to say: "In *Thaniel* v. *Commonwealth,* 132 Va. 795, 111 S. E. 259, Kelly, P., speaking for the court on this question, said: 'Section 4778 permits the accused himself to testify, and to do so he must accept all of the terms of that section, and (1) "be deemed to have waived his privilege of not giving evidence against himself," and (2) "be subject to cross-examination as any other witness * * *." The right to cross examine him "as any other witness" implied the right to impeach his credibility by the same rules as those applicable to other witnesses. To

discredit the witness, if there be reason to doubt his truthfulness, is one of the legitimate and leading objects of cross-examination.' " The case just quoted did not involve a previous conviction, but was based upon the compulsory testimony of the accused on her preliminary examination being used to contradict a statement made on the stand at her trial. In 1932, however, in the case of *Hicks* v. *Commonwealth,* 157 Va. 939, 161 S. E. 919, that court definitely applied the rule it had clearly stated in 1923, and held that an accused upon cross-examination could be examined concerning a previous conviction of a felony by virtue of section 4779 of the Code of that state providing that the conviction of a felony could be shown as affecting the credibility of a witness.

The test of credibility is an elemental part of cross-examination, and to say that the accused in taking the witness stand subjects himself only to cross-examination as to "matters relevant to the issue" does not enlarge the narrow rule in effect in West Virginia and three other states prior to the enactment of our 1931 Code. Such a construction, we believe, would certainly unduly restrict the meaning of the clause "shall be subject to cross-examination as any other witness"; and we are of the opinion that it was the purpose of our legislature in enlarging the section under consideration to place the rule of this state in accord with the admitted weight of authority.

We are of the opinion that the difference between a felony and a misdemeanor in this state has no bearing upon the question under consideration, because we have no statute in point recognizing that distinction and confining the permission to interrogate witnesses concerning a former conviction to the commission of a felony. Of course, the trial judge, if requested to do so, should inform the jury that the cross-examination as to former convictions does not relate to the question of guilt or innocence, but only to the question of credibility. Due to the doubtful effect upon the jury, we do not think the trial judge should assume the initiative.

Concerning point four, it is obviously unnecessary that the character of the accused be put in issue before his credibility as a witness may be attacked.

As to point five, we are of the opinion due to the fact that emission of semen under our cases need not be shown in a prosecution for rape, and that the statute defining sodomy is phrased in practically identical language as that defining rape, that the emission of semen need not be alleged nor proven in a prosecution for the latter offense. *State* v. *Brady,* 104 W. Va. 523, 140 S. E. 546.

We have carefully examined the instructions given and declined and covered by assignments six and seven, and find no error in state's instructions numbers two and three upon "reasonable doubt," although this and other courts have frequently said that the term itself is both as restricted and comprehensive as any generally understood definition thereof can be made. We see no error in declining defendant's instructions eight and nine, the first containing the statement that it is better for ninety-nine guilty to go free than for one innocent person to be convicted, and the second plainly over-emphasizing the effect to be given by each individual juror to his personal convictions arrived at during the trial.

Being of the opinion that this record discloses no apparent error, but that under all the circumstances, the accused was dealt with both fairly and impartially, the judgment of the Circuit Court of Taylor County will be affirmed.

*Affirmed.*