STATE OF WEST VIRGINIA *v.* ONA MULLENAX

(No. 9256)

Submitted February 24, 1942. Decided April 7, 1942.

RILEY, JUDGE, dissenting.

*A. E. Cooper,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

ROSE, JUDGE:

This case comes here on a writ of error to a judgment of the Circuit Court of Pocahontas County by which one Ona Mullenax was sentenced to the penitentiary for a term of from one to ten years upon conviction for grand larceny.

The indictment was returned at the March term of that court, 1941, and against the defendant jointly with three others. It consists of three paragraphs. The first charges simply "that Ona Mullenax, Richard McCray, Jimmie Vandevander and Jack Mullenax on the _____ day of October, 1940, in the said County of Pocahontas, two yearling heifers of the value of Thirty-Seven Dollars and Fifty Cents ($37.50) each of the total value of Seventy-Five Dollars ($75.00), of the goods, effects and property of J. M. Hiner, feloniously did steal, take and carry away against the peace and dignity of the State." The remaining two paragraphs are headed "Second Count", and charge minutely the indictment, trial, conviction and sentence of Ona Mullenax for a former felony. A demurrer to the indictment was interposed on the ground that the property alleged to have been stolen is not sufficiently described in the indictment. Whatever may have been the earlier law on this point, and whatever may be the law in other states, this Court has consistently upheld indictments for larceny with no fuller description of the property involved. *State* v. *Lewis*, 117 W. Va. 670, 187 S. E. 315, 728, 188 S. E. 473; *State* v. *Robinson*, 106 W. Va. 276, 145 S. E. 383, 62 A. L. R. 351; *State* v. *Bailey*, 63 W. Va. 668, 60 S. E. 785; *State* v. *Blair*, 63 W. Va. 635, 60 S. E. 795; *State* v. *Hupp*, 31 W. Va. 355, 6 S. E. 919. The demurrer was correctly overruled.

On the separate trial of Ona Mullenax had on March 19, 1941, the jury returned this verdict: "We the jury find Ona Mullenax guilty as to within indictment", which was amended by the court to read as follow: "We the jury find the defendant, Ona Mullenax, guilty as charged in the first count of the within indictment, and we the jury under the instruction of the Court find that the said

defendant, Ona Mullenax, was not formerly convicted of a felony as charged in the second count of the within indictment." This final verdict was subsequently set aside for reasons which do not appear in the record, and a new trial was awarded. Ona Mullenax was retried June 9, 1941, the verdict being as follows: "We, the jury find the defendant guilty as charged in the indictment", which was amended by the order of the court to read thus: "We, the jury find the defendant, Ona Mullenax, guilty as charged in the first count of the within indictment." Motions to set aside the verdict and in arrest of judgment were overruled, and the defendant was sentenced as above stated.

The principal witness for the state was Richard Mc-Cray, one of the four named in the indictment. At the time the crime was committed, McCray was a fugitive from the state penitentiary where he was serving a sentence for another larceny of cattle. He also had served a term in a federal prison for burglary of a post office. McCray testified that after escaping from a road gang in May or June preceding the present offense, he came to the home of Ona Mullenax in Pocahontas County where he got a meal, and then made his way to Louisville, Kentucky, thence across the river into Indiana, where he worked on a farm; that he came back to the Mullenax home October 16, 1941, driving a red Dodge truck equipped with a rack for hauling cattle, bearing a Kentucky license issued in the name of J. A. Allen, which he had assumed to conceal himself from the officers in search of him; that he remained in the Mullenax home until the evening of October 18th, when about nine o'clock P. M., he and Ona Mullenax, his son, Jack Mullenax, and Jimmie Vandevander, a brother of Ona's wife, stole two yearling calves, the ownership of which he did not know; that he personally took these calves to the Union Livestock Sales Company at Parkersburg, arriving there on the 19th of October, which was Saturday, where they were sold for a price between seventy and seventy-five dollars; that he was paid by a check which he cashed at the Dodge garage

of that city, from the proceeds of which he purchased about twenty-six dollars worth of flour, meal, middlings and salt from the Peerless Milling Company, under an agreement with Ona Mullenax that his share of the profits of the theft should be brought to him in the form of groceries and feed, and that he returned to Pocahontas County October 23rd and delivered the flour and feed at the home of Ona Mullenax. He further testified that on the night of the larceny, the defendant got for him six to eight gallons of gasoline from some nearby filling station, bringing it in a drum or keg. The keeper of the filling station testified to the sale of the gasoline, and identified the check of Mullenax dated October 18th, by which it was paid for, but says that Mullenax then explained to her that the gasoline was for some hunters who "ran out of gas". A resident on the farm adjoining that of Mullenax testified to having seen a truck "partly painted red" equipped with a rack suitable for hauling cattle standing near the Mullenax house on a day in the latter part of October, and again on the second day thereafter.

This story as to the sale and disposition of the calves is corroborated by: a state policeman who had accosted McCray near Parkersburg and interrogated him about himself and the cattle; the secretary of the Livestock Sales Company at Parkersburg who identified and exhibited records to show that McCray delivered two calves to that place from which they were sold; the purchaser of one of the calves who bought the same for a man named Lewis in Mason County; a deputy sheriff of Pocahontas County who was with the agents of the owner of the cattle when they identified the heifer at the Lewis farm in Mason County; an employee of the Dodge garage at Parkersburg who narrated his dealings with McCray and the cashing of the check given for the calves; a representative of the Peerless Milling Company at Parkersburg who exhibited books of account relating to McCray's purchase of the flour and feed in question; and an employee of the owner of the cattle who identified the animal

found in Mason County from personal marks of the owner and the tag attached by an inspector at Parkersburg. The other calf was not located and was not traced further than the sales yard at Parkersburg.

The state policeman testified that the calves in McCray's truck at the time of his inspection were one heifer and one steer. The stock yard records clearly described one heifer but are not definite as to the sex of the other calf. McCray says he does not know the sex of the animals. The employee of the owner and another who assisted in the search for them are not positive, but believe that one of the missing calves was a steer.

A certified copy of the indictment in the former case, as well as the orders showing the trial of Ona Mullenax, and his conviction and sentence, were read in evidence. After a motion for a directed verdict was overruled, the defendant called his son, Jack Mullenax, indicted with him, his wife and daughter, and one Ed Barkley, who is claimed to have been staying in the Mullenax home, who, together with himself, testified directly that McCray was never at the Mullenax home except for the one meal in May or June; that Ona Mullenax was not absent from his home on the 18th day of October, when the cattle were supposed to have been stolen; and that he was in Monterey, Virginia, on the 17th of that month. Olet Mullenax a half-brother of the defendant, and his wife and son testified that the defendant was in Monterey, Virginia, all of October 17th where he had taken them to pay a note held by a bank at that place, and exhibited a check bearing that date and a paid note in corroboration. The wife of the defendant admits that flour and meal from the Parkersburg mill were found in their home, but says that it was gotten from her father in return for feed and flour formerly lent to him. Her father testified that he bought this flour and feed from McCray and that he did give a portion of what he bought to Ona Mullenax in return for provisions formerly borrowed. The four members of the Mullenax family and Ed Barkley testified further that a man named Ed Frizzell of Charleston and a com-

panion called "Fats" came to the Mullenax home on a hunting expedition during the time McCray claims to have been there, and that the gasoline bought by the defendant on the 18th of October was for Frizzell, who had run out of gas, and was used in his car. This story is severely criticized because it was not mentioned on the former trial by any of these witnesses, and because the two men are not produced as witnesses, although a subpoena for Frizzell was delivered to the defendant who says that he mailed it to the witness at Charleston, and files in evidence a telegram dated June 9th, the day of trial, purporting to be signed by Frizzell, stating that he could not respond on account of sickness. Also it is to be observed that there is marked disagreement among the defendant, his wife, his daughter, his son and Barkley in their evidence regarding the Frizzell car; some saying it was a truck, others a two-seated passenger car, some that it was red, others black, and some that it stood in front of the house when the gas was placed in it by the defendant, others that it was a mile distant.

The defendant, without objection, on cross-examination answered freely and fully that he had been indicted, convicted, sentenced and served the sentence for the former offense charged in the indictment.

Six witnesses who had personally known McCray for a substantial length of time testified that his reputation for truth and veracity was bad, and that they would not believe him on oath.

The admission in evidence on behalf of the state of a copy of the indictment and the orders showing the defendant's trial and conviction of the former felony is assigned as error. It is argued that the finding by the jury in its verdict on the first trial "that the said defendant, Ona Mullenax, was not formerly convicted of a felony as charged in the second count of the within indictment" foreclosed that question for all purposes then and thereafter, and that to re-try that issue on the second trial would be analogous to the re-trial, for instance, of one for murder after the setting aside of a verdict for man-

slaughter only. However, we are of opinion that "jeopardy" in the constitutional sense, is not involved in a trial before a jury of the question of a former conviction under Code, 61-11-18. In *State v. Graham*, 68 W. Va. 248, 69 S. E. 1010, 1011, 40 L. R. A. (N. S.) 924, Judge Robinson, speaking for the Court, said:

> "Our law does not make it an offense or crime for one to have been convicted more than once. Former conviction is not an integral part of the second or new offense. The law simply enjoins longer sentence because of former conviction. It does not prosecute and punish for the former conviction. It cannot do that. * * * The sentence is an incident to the last offense alone. But for that offense it would not be imposed. So proceedings made under this statute cannot be said to constitute a holding to answer for crime or a placing in second jeopardy for an offense. They are merely ancillary proceedings for the rightful sentence which the law mandatorily enjoins upon those already held or jeopardized."

That case has received the seal of affirmation by the Supreme Court of the United States in *Graham* v. *West Virginia*, 224 U. S. 616, 32 S. Ct. 583, 56 L. Ed. 917, in a unanimous opinion by Justice Hughes. If the original trial on the question of the former conviction is not "jeopardy", it follows that a second trial of that issue cannot be a second "jeopardy", and that the first verdict favorable to the defendant can be set aside and a new trial had on that issue as on any other which does not put the defendant "twice in jeopardy", as prohibited by the constitution.

We feel some concern about the fact that the whole indictment was read to the jury with all its minutiae of offensive details, contrary to the course of procedure approved by this Court in *State* v. *Stout*, 116 W. Va. 398, 180 S. E. 443, and again alluded to by us in *State* v. *Fisher*, 123 W. Va. 745, 18 S. E. 2d 649. But we observe that objection to the reading of the former indictment in evidence was not distinctly made, and that, of course, the present

indictment itself, which, under our practice, was taken to the room by the jury, contained the full substance of the former indictment, and further, the defendant, when testifying on his own behalf on cross-examination freely and fully admitted the former indictment and conviction with considerable of the details contained in the former indictment. This record evidence, therefore, would seem to become utterly harmless in the present trial.

An assignment of error is based on the questions propounded to, and answered by, the defendant relating to his indictment and conviction of the former felony alleged in the present indictment. To sustain this assignment, the plaintiff in error relies upon the cases of *State* v. *Coleman,* 96 W. Va. 544, 123 S. E. 580; *State* v. *Webb,* 99 W. Va. 225, 128 S. E. 97; *State* v. *Walker,* 92 W. Va. 499, 115 S. E. 443; and *State* v. *White,* 81 W. Va. 516, 94 S. E. 972. But these cases were decided before the adoption of the Code of 1931, which, by sections 5 and 6, article 3, chapter 57, expressly authorizes, as we have held, such interrogation on cross-examination of a defendant testifying on his own behalf on his trial for a felony. *State* v. *Friedman,* 124 W. Va. 4, 18 S. E. 2d 653; *State* v. *Petlock,* 113 W. Va. 645, 169 S. E. 480.

It is further argued that since the indictment alleged the larceny of two yearling heifers, while the evidence shows, or clearly tends to show, that the animals were actually one heifer and one steer, there was a fatal variance which requires the setting aside of the verdict. But the larceny of one yearling heifer of a value above twenty dollars was clearly proven, thus establishing a case of grand larceny. The proof, even if considered conclusive, that one of the calves stolen was a steer, is merely an affirmative showing that only one heifer was stolen. Failure to prove the stealing of all the property described in an indictment for larceny does not justify an acquittal. 36 C. J., p. 858; 32 Am. Jur., Larceny, sec. 146, p. 1059; *Tucker* v. *State,* 100 Fla. 1440, 131 So. 327; *State* v. *Hessian,* 58 Iowa 68, 12 N. W. 77; *Booher* v. *State,* 80 Tex. Cr. R. 72, 188 S. W. 977; *Thomas* v. *State,* 16 Ala. App. 219, 77 So. 57; *Chappe-*

*lear* v. *State,* 10 Okla. Cr. 392, 136 P. 978. This holding does not leave the defendant open to further indictment and conviction for stealing of the steer. The stealing of two animals belonging to one owner at the same time is but a single offense; the act cannot be split up into separate larcenies, each for a single animal. *West* v. *Commonwealth,* 125 Va. 747, 99 S. E. 654; *Commonwealth* v. *Johnson,* 133 Pa. 293, 19 A. 402; *People* v. *Righetti,* 66 Cal. 184, 4 P. 1185; *State* v. *Hall,* 111 Kan. 458, 207 P. 773; *State* v. *Wagner,* 118 Mo. 626, 24 S. W. 219; *Vought* v. *State,* 135 Wis. 6, 114 N. W. 518, 646, 32 L. R. A. (N. S.) 234, 128 Am. St. Rep. 1008.

The verdict is not without sufficient evidence for its support. The testimony of the accomplice is straightforward and contains no inherent unreliability. It is true that he is a mere accomplice with a rather full criminal record, and that a number of witnesses who knew him assail his veracity. But the buying of the gasoline on the 18th of October is some corroboration. How did he know that the gasoline was bought by the defendant if he was not there? Also some of the flour and feed bought by Mc-Cray at Parkersburg with the proceeds of the cattle was actually found in the defendant's home. The defendant's unsatisfactory showing of excuses for the absence of the pretended witnesses Frizzell and "Fats" did not strengthen the testimony of himself and the members of his family that McCray was not at the Mullenax home about the time of the crime. There were thus facts tending to corroborate, as well as others going to impeach, the testimony of McCray; and there were matters in evidence which tended to weaken, as well as to support, the defendant's denial of complicity in the crime. Therefore, we cannot say as a matter of law that the verdict is without support in the evidence.

*Affirmed.*

RILEY, JUDGE, dissenting:

I am not in accord with that portion of the majority opinion which holds that an indictment, charging the accused with the theft of "two yearling heifers" is sustained

by proof of the stealing of one heifer and one steer. In the dissenting note filed in *State* v. *Nelson,* 121 W. Va. 310, 312, 3 S. E. (2d) 530, attention was directed to cases from other jurisdictions to the effect that where an article stolen is described with unnecessary particularity, the proof must correspond with the description. Likewise, *Clemons* v. *State,* 150 Ark. 425, 234 S. W. 475, recognizes that there is material variance between an indictment alleging larceny of two cows, and proof of larceny of one steer.

Attempt is made to justify the conclusion of the majority opinion upon the theory that "Failure to prove the stealing of all the property described in an indictment for larceny does not justify an acquittal." Yet that opinion admits that the "stealing of two animals belonging to one owner at the same time is but a single offense; the act cannot be split up into separate larcenies, each for a single animal." I agree that the stealing of two animals constitutes but a single offense and that is the offense with which the accused was charged in the instant case; yet does not the majority opinion, in permitting the theft of one heifer and one steer to satisfy the charge of stealing two heifers, split a single offense?

While I do not believe the law violators should escape punishment through technicalities of law, neither do I believe that the reasoning which impelled the requirement of exactness in the charge of an indictment under the early common law has been obliterated by the passage of time.