STATE OF WEST VIRGINIA

*v.*

JAMES LAROSA

(No. 9811)

Submitted September 10, 1946. Decided December 17, 1946.

*James Cann, Maxwell & Young* and *Haymond Maxwell, Sr.,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Ralph M. Hiner,* Assistant Attorney General, *Eston B. Stephenson,* Special Assistant Attorney General, and *J. Philip Clifford,* Prosecuting Attorney, for defendant in error.

FOX, JUDGE:

James LaRosa complains of the judgment of the Circuit Court of Harrison County, sustaining the judgment of the criminal court of said county, entered upon a verdict of a jury, sentencing him to fine and imprisonment for operating a place of prostitution, lewdness and assignation, at a specified location in the city of Clarksburg. The final judgment of the circuit court was entered on the 31st day of October, 1945, to which we granted a writ of error and supersedeas.

Four points of error, alleged to have been committed by the trial court, are stressed on this hearing: (1) That the warrant under which defendant was convicted was insufficient; (2) that the evidence was insufficient to sustain the verdict of guilty returned by the jury; (3) that it was error, as a part of the State's case in chief to permit the introduction of evidence tending to show that sales of intoxicating liquor were made at the Home Hotel; and (4) it was error to permit the State to elicit from defendant, on cross-examination, the fact that he had, in the month of September, 1945, before a justice of the Peace, in answer to a warrant on a charge of selling intoxicating liquor at the same location where, it was alleged, he operated the place of prostitution, lewdness and assignation aforesaid, confessed to said charge and paid a fine therefor.

The warrant in this case is in all essential particulars the same as that involved in *State* v. *Crummitt*, 129 W. Va. 366, 40 S. E. 2d 852, decided at this term. In that case we held: "A warrant dated September 18, 1944, on which an accused is tried, as distinguished from a warrant of arrest, which charges that the accused did knowingly and unlawfully keep, maintain and operate a place of prostitution 'on the ——— day of ————, 1944', substantially follows the language of the statute describing that crime, and is sufficient upon a motion to quash." Point 1, syl. That ruling clearly applies to the case at bar; and inasmuch as the question here involved was elaborately discussed by the Court in the *Crummitt* case, further comment is not deemed necessary.

The evidence shows that defendant is the owner of land and a building known as the "Home Hotel", located at 415 and 417 Clark Street, in Clarksburg; that for the fiscal year beginning July 1, 1944, he held a license to operate a hotel at that place; that the night clerk at the hotel, Bennie Silvert, was employed by defendant and had been so employed since January, 1944; that in the month of March, 1943, Bennie Silvert, was indicted for operating the Home Hotel as a place of prostitution, and plead

guilty to said charge on March 18, 1943; and that the defendant, not more than two weeks thereafter, learned of this indictment and confession. Defendant admits this knowledge, but says that at the time he employed Silvert in January, 1944, he gave him instructions to be careful not to violate any laws.

In this situation, there appeared on the scenes, a stranger, one Koester, an undercover man employed by the law-enforcing bodies of Harrison County, to investigate certain conditions then believed to exist in that county. This man visited the Home Hotel on several occasions beginning August 27, and continuing to August 31, 1944. On the latter date at about two o'clock a. m., he visited the hotel, on the street and ground floor, and ordered a highball, and, while drinking the same, a girl came in and sat down with him. He did not know her, but ordered her a drink, which she accepted, then ordered another and they then procured a room; that a girl arranged for the room with Bennie Silvert, identified at the trial; that Silvert gave to the girl the key to a bedroom; that she addressed the clerk by his first name; that when the clerk delivered the key to her, without his aid or direction, she took Koester to the room assigned to them; that in the room she solicited witness to commit acts of prostitution with her; and that he gave the girl three dollars, and paid two dollars and four cents for the room; that he was in the room with the girl thirty minutes or more, and while there purchased for her two more drinks. Following this occurrence a search warrant was sworn out by Koester, and a raid was made on the Home Hotel on September 9, 1944, at which time three people were found in the hotel in room No. 43, a man and two women. The man's name was Thomas Massadon, and the women's names were Ruth Elinor Stiner and Jane Anderson, of the respective ages of fifteen and seventeen years. When these people were arrested they gave their names as Mr. and Mrs. Powell and Joan Powell. Five witnesses testified as to their knowledge of the general reputation of the Home Hotel in the Clarksburg community, as being a place of prostitution, lewdness and

assignation, and all of them said that such reputation was bad. On this testimony the State rested its case, and a motion, then made to direct a verdict for defendant, was overruled.

The defendant then testified and gave an explanation of the license for operating the hotel being in his name; stated that he did not spend much time at the Home Hotel; that he might drop in once a week, or something like that, but that he did maintain the building; that he had no knowledge of any acts of prostitution, lewdness or assignation of any kind being practiced in the hotel. He admitted employing Bennie Silvert as night clerk, and that he had been in his employ since January, 1944, and, as heretofore stated, admitted his knowledge of Silvert's having been indicted for operating the Home Hotel as a place of prostitution in March, 1943, and his confession on that charge.

We are of the opinion that the evidence fully sustains the charge contained in the warrant that a place of prostitution, lewdness and assignation was being operated at the Home Hotel, and that defendant was fully cognizant thereof. Defendant testified that he lived within a block and a half of the hotel, and, while he attempted to minimize his actual connection with the operation of the hotel, it is clear that he must have known what was going on. Aside from the fact that a licensee must, under ordinary conditions, be held to be responsible for what transpires in the exercise of that license, it is inconceivable that a person who is the owner of a hotel, who has a license to operate the same as such, and who lives in the immediate vicinity, and who, according to his own admission, visits the hotel every week at least, does not know what is going on. The evidence that the place was actually operated as a house of prostitution is clear. Women do not go to a hotel alone at two o'clock in the morning, and while there accost a stranger, take him to a bedroom, with the actual knowledge and connivance of the night clerk, who did nothing more than deliver the key thereto, and allow the woman to find the room

without any aid from him, their association with each other being such that the woman was able to call the clerk by his first name, without there arising the irresistible conclusion amounting to clear proof, that the hotel was being operated as a place of prostitution, lewdness and assignation. Aside from this, a man and two other women, registered under assumed names, were found in the hotel when the raid was made thereon a few days later, and the bad reputation of the hotel, as a place of prostitution, lewdness and assignation, is fully established. We hold that the charge contained in the indictment, and the defendant's connection therewith, were fully sustained, without regard to the evidence as to the sale of liquor next to be considered.

The next question involves the admission of the testimony of the witness, Koester, that on several occasions he purchased intoxicating liquor at the Home Hotel. It is contended, particularly under the authority of *State v. Light,* 127 W. Va. 169, 31 S. E. 2d 841, that this was error. In the *Light* case we held: "It is a general rule, subject to exceptions, that on trial of a person indicted for a specific offense, evidence of the commission of distinct and unconnected criminal acts other than that charged, is inadmissible." In the *Light* case, Artie Light was tried on an indictment charging her with keeping a house of ill fame. The State, in its evidence in chief, introduced testimony tending to show that defendant had sold intoxicating liquor at the same place where, it is alleged in the indictment, she maintained and kept a house of ill fame. We held that the admission of this evidence was prejudicial error; that the offenses were separate and distinct; that there was no established connection with the offense charged in the indictment, and for that reason it was irrelevant.

We do not think the *Light* case applies to the facts presented on the record before us. In that case the sale of liquor was entirely disconnected from the charge contained in the indictment, which was that of keeping a house of ill fame. Here the sale of liquor, and the op-

portunities afforded for prostitution, were part of one and the same unlawful act. The witness Koester visited the Home Hotel on different occasions, and on the night of August 31, while purchasing liquor, was accosted by one who, we may assume from the evidence and circumstances, was an habitue of that establishment. He bought drinks for her, two in the bar, and two after they went upstairs to the bedroom, where she solicited him to engage in acts of prostitution with her. This of itself made the testimony as to the sales of liquor relevant and material. Furthermore, this evidence is relevant in another connection. Defendant testified that he knew nothing of the prostitution, lewdness or assignation charged in the warrant, and minimized his connection with the hotel and his presence there; yet, when he was charged with selling liquor at the same Home Hotel, he appeared, confessed thereto, and paid a fine. If his knowledge of what was going on at his hotel was such as to lead him to assume responsibility for the sale of liquor, that same knowledge would make him responsible for his employees in operating a house of ill fame. His assumed knowledge of the sale of liquor argues strongly that he also had knowledge of how the hotel was being conducted in other respects.

The remaining question involves whether the trial court committed error in requiring an answer to the following question, which was propounded to defendant on cross-examination: "Mr. LaRosa, it is true, is it not, on the 18th of September, this year, before Justice of the Peace Okey Hamrick, at Shinnston in this County, a warrant was issued for you on complaint of M. C. Koester for operating a liquor nuisance in the Home Hotel, and you were arraigned on that warrant and before O. Hamrick plead guilty and paid a fine and costs", to which he answered, "Yes." It is contended that this was error under the authority of *State v. Light, supra,* particularly on the ground that it was not relevant to any issue in the case. We have already indicated why we think this evidence was material and relevant. We also think it was proper evidence under the provisions

of Code, 57-3-6, as construed by this Court in *State* v. *Friedman,* 124 W. Va. 4, 18 S. E. 2d 653, and subsequent cases on the subject there considered. A reading of the opinion in that case will clearly show that what the Court there had in mind was that the conviction of a former offense there proved, affected the credibility of the witness and was, therefore, relevant. The case of *Hicks* v. *Commonwealth,* 157 Va. 839, 161 S. E. 919, was cited for the proposition that the accused, on cross-examination, could be examined concerning previous conviction of a felony; and it was indicated by this Court in the *Friedman* case that the difference between a felony and a misdemeanor was, under our statute, unimportant on the question of relevancy, and our opinion contained this language: "Of course, the trial judge, if requested to do so, should inform the jury that the cross-examination as to former convictions does not relate to the question of guilt or innocence, but only to the question of credibility. Due to the doubtful effect upon the jury, we do not think the trial judge should assume the initiative." There is, therefore, no reason why the rule announced in the *Friedman* case should not be followed without impairing the right of a defendant in a criminal case, who voluntarily testified as a witness, to protect himself against unwarranted inquiries, which can have no possible relevancy to any matter in issue in the case. Prosecuting attorneys should refrain from making use of the rule laid down in the *Friedman* case, where the effect is to bring into a case matters not relevant to the issue; and where they are not disposed to exercise proper restraint in this respect, courts should, when requested, require them to do so. But aside from the *Friedman* case, we think the inquiry was pertinent and clearly relevant. If the defendant assumed responsibility for the sale of liquor, it proved that he had the knowledge of what was transpiring at the Home Hotel in other respects, including what we think was the fact that it was being operated as a place of prostitution, lewdness and assignation.

In our opinion, the refusal of the trial court to permit the showing that Louis Roda had charge of the hotel, as manager, at the time the acts alleged in the warrant were committed was not such error as would warrant a reversal of the judgment in this case. It clearly appears that the defendant owned and maintained the hotel building, and that he employed a night clerk who participated in the offense alleged. The fact that Louis Roda may have been employed as manager and operator of the hotel by defendant did not relieve defendant of his responsibility to see that the same was conducted in accordance with the requirements of law. Moreover, it appears from the vouched testimony of defendant that Louis Roda was his son-in-law, and even if the evidence that Roda operated the hotel had gone to the jury, there seems to be no reasonable probability that that fact would have had any effect on the jury's verdict.

The judgment of the Circuit Court of Harrison County in refusing to set aside the judgment of the criminal court of that county is affirmed, as is the judgment of the criminal court of that county.

*Affirmed.*