STATE OF WEST VIRGINIA

*v.*

WILLIAM CLAUDE SIMMONS

(No. 12236)

Submitted January 14, 1964.     Decided March 17, 1964.

*Edwin C. Runner*, for plaintiff in error.

*C. Donald Robertson*, Attorney General, *George H. Mitchell*, Assistant Attorney General, for defendant in error.

CAPLAN, JUDGE:

At the January Term, 1962, of the Circuit Court of Randolph County the defendant, William C. Simmons, was indicted for the murder of Donald Leatherwood. It was

alleged in the indictment that the murder occurred in Randolph County in October, 1961. The defendant entered a plea of not guilty. At the trial which was held from May 1 to May 4, 1962, the jury found the defendant guilty of murder in the second degree. After his written motion to set aside the verdict and grant him a new trial was overruled, the court, on September 15, 1962, sentenced the defendant to confinement in the state penitentiary for a period of not less than five nor more than eighteen years. Upon the petition of the defendant, this Court, on April 29, 1963, granted this writ of error and supersedeas.

On the night of October 20, 1961, Richard Lange, one of the principal witnesses in this case, and Donald Leatherwood, the deceased, both senior students at Davis and Elkins College, were at the American Legion Home in Elkins until sometime after eleven thirty o'clock. Thereafter, they went to Lange's room for a jacket for Leatherwood and then to their fraternity house, where they joined a gathering of other students.

At approximately two o'clock in the morning Lange and Leatherwood left the fraternity house and walked to the business district of Elkins. Here they entered a parking lot where there was located an old bus in which the defendant made his home. Upon approaching the bus they began to pound on the side thereof. Lange picked up a piece of wood, approximately 4" x 4" and about three feet in length, and began to hit the side of the bus with it. They continued to create this disturbance until they saw the shadow of a person coming toward the door at the front of the bus.

Lange testified that the defendant came out of the door and immediately fired a shot from his gun. He did not know where the bullet went but it did not hit Leatherwood, who had walked up toward the front of the bus. According to his testimony the deceased told the defendant that he wanted to buy a bottle, but that the defendant said, "You better get out of here", then struck Leatherwood across the face. Lange then testified as follows:

"Q. And then what conversation did you hear, if any?

"A.  The man said, 'You better get out of here.  I am going to kill you!'  And there was talk—I couldn't hear too clearly just that, and then Donnie said, 'All I came here for was to buy a bottle.'  He said 'You better get out of here or I'm going to kill you!'  He said, 'You wouldn't want to do that.  I wouldn't kill you.'  Then he came forward again and hit him in the head with the gun. .

"Q.  Who hit whom, now?

"A.  The man that came out of the bus hit Donnie with the gun the second time, and I could see—well this time Donnie looked to me like he went for the gun, and there was a little struggle and they went to the front of the bus and then I heard three shots fired—two quick ones and then one momentarily afterwards, and this man said, 'That will fix him!'  And he walked back to the bus."

Lange then said he ran to the front of the bus, saw that Leatherwood was seriously injured, lifted him on his shoulder, carried him off the lot and left him in the alley. Thereafter he ran to his fraternity house where he contacted a friend who had a car.  They went back to the alley, picked up Leatherwood and took him to a hospital, where, a few hours later, he died.

This witness first told the police that he did not know what had happened to Leatherwood, but later, realizing the seriousness of the situation, told them the whole story.

The defendant testified that the deceased was the aggressor and had said, "I'm coming in there one way or the other."  He said that he was protecting himself; that he was slightly built and in poor physical condition; that Leatherwood was younger and much stronger than he; and that he fired the shot because he was in fear of receiving bodily harm.  The defendant stated at the trial that he did not recall hearing the deceased say anything about buying a bottle.

It is apparent that during the trial the prosecution was attempting to show that the defendant had engaged in selling liquor at his bus home, although no showing whatever was made to prove a conviction therefor.  The record shows the following testimony and action by the court and counsel:

"Q.  Do you want to tell this Court and jury that you were not selling whiskey from that bus located on that vacant lot?

"Mr. Stemple:  Objected to.

"The Court:  Overruled.

"Mr. Stemple:  Exception.

"Mr. Fowler:  You may answer.

"The witness:  I was not.

"Mr. Fowler:  Q.  Do you know a Dunton Alpheus Wyatt, Jr.?

"A.  Never heard of him before."

The prosecuting attorney then asked if he had ever sold whiskey to Wyatt.  Over the objection of counsel for the defendant, the court permitted the witness to answer, for the purpose only of testing his credibility.  The defendant then answered the question in the negative.  Defense counsel objected to all of the evidence relating to the sale of whiskey for the reason that it was immaterial and further objected on the ground that a witness can not be impeached on immaterial matter.

In rebuttal the State called Wyatt as a witness and adduced testimony from him that he had, one week prior to this homicide, purchased a bottle of bourbon whiskey from the defendant.  This evidence was permitted over the objection of the defendant's counsel and an exception was thereafter noted.

The defendant in this appeal cites as error the action of the trial court in allowing testimony relating to the sale of whiskey by the defendant at his bus home.  It will be recalled that the prosecuting attorney did not ask him if he was ever convicted for the illegal sale of whiskey, but asked him only if he had not sold whiskey there.  Furthermore, the prosecutor did not prove, or even attempt to prove, in the State's rebuttal, that the defendant had been convicted for any sale of whiskey to Wyatt or to anyone else.  The defendant objected and excepted to the rulings

of the court in permitting these questions to be propounded and in requiring answers thereto.

Specifically, the defendant complains that "The Trial Court erred in permitting a witness to testify that he bought liquor of the defendant even though the Court told the jury that this evidence was only permitted for the purpose of impeachment, it being wholly immaterial to this case whether or not the witness had bought liquor a week before from the defendant, over the objections and exceptions of the defendant." Inasmuch as this testimony was adduced by the State in rebuttal for the purpose of contradicting the defendant's answer to a question asked on cross-examination, it is necessary to consider the propriety of all such testimony.

Let us consider first the testimony of the defendant. On cross-examination he was asked if he had sold whiskey at his bus home. He answered, after his objection to the question was overruled, that he had not. While it is true that under the provisions of Code, 1931, 57-3-6, a defendant who voluntarily testifies in his behalf shall be subject to cross-examination as any other witness, such requirement is not without limitation. The pertinent part of Code, 1931, 57-3-6, reads: "In any trial * * * for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness * * *; and if he so voluntarily becomes a witness he shall, *as to all matters relevant to the issue,* be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; * * *." (Emphasis supplied).

By reason of the foregoing statute a defendant can be questioned about all matters concerning the crime of which he is accused. This Court has held that a defendant in a criminal case who voluntarily becomes a witness in his own behalf may be required to state in response to questions propounded on cross-examination whether he has been convicted of other offenses. *State* v. *Friedman,* 124 W. Va. 4, 18 S. E. 2d 653; *State* v. *Mullenax,* 124 W. Va. 243, 20 S. E. 2d 901; *State* v. *McMillion,* 127 W. Va. 197, 32

S. E. 2d 625. The decisions in those cases, however, were based on the premise that such questions concerning a former conviction were designed to test the credibility of the witness.

On the other hand, this Court has held that a defendant can not be asked, on cross-examination, if he has violated some other law. *State* v. *Foley,* 128 W. Va. 166, 35 S. E. 2d 854; *State* v. *Bragg,* 140 W. Va. 585, 87 S. E. 2d 689. In the *Foley* case, the defendant was charged with murder. Upon cross-examination he was asked if he had a license to carry a pistol. This the court held was objectionable and constituted reversible error. It was stated therein: "This Court years ago decided against the propriety of interjecting into a criminal case the mere accusation of another offense against the accused for which he was not being tried." Cited was *Watts* v. *State,* 5 W. Va. 532. See also *Simon* v. *United States* (C.C.A., 4th, W. Va.), 123 F. 2d 80. It was further noted in the *Foley* case that under Code, 1931, 57-3-6, the defendant waives his privilege of not giving evidence against himself when he voluntarily becomes a witness only "as to all matters relevant to the issue." Carrying a pistol without a license was an offense separate and distinct from the crime of murder and was in no way relevant to the issue, the charge of murder in that instance.

In view of the foregoing, consider now the cross-examination of Simmons, the defendant in this case. The prosecutor, without any foundation therefor, asked: "Do you want to tell this Court and jury that you were not selling whiskey from that bus located on that vacant lot?" Over the objection and exception of the defendant the court required an answer. When Simmons voluntarily became a witness in his own behalf he waived the privilege of not testifying against himself only as to matters relevant to the issue. Code, 1931, 57-3-6. The sale of whiskey other than by the means prescribed in our statutes constitutes a crime. This defendant was being tried for murder. Certainly the illegal sale of whiskey is an offense separate and distinct from that of which the defendant was charged. The issue in this case is whether Simmons is

guilty of murder. Whether the defendant sold whiskey is not a matter relevant to the issue and compelling the defendant to reply to this improper question is a violation of his rights under the reasoning in the *Foley* case and under the provisions of Code, 1931, 57-3-6.

The objectionable question and answer involved the accusation of a crime wholly unrelated to the crime for which Simmons was on trial. No attempt was made to show that the defendant was ever convicted of the crime of illegal sale of whiskey. Testimony of this nature, in no way relevant to the issue, can not be used to test the credibility of the defendant. The whole of Code, 1931, 57-3-6, must be applied and given meaning. Only by virtue thereof is the defendant permitted to be a witness on his own behalf and his right and duty to testify thereunder extend only to "all matters relevant to the issue." If immaterial, irrelevant and collateral matters were permitted to be introduced in cross-examination, the result would lead to confusion and could serve only the purpose of prejudicing the jury. We are of the opinion that such questions and answers were improper and the court's action in permitting them constituted reversible error.

We come now to a consideration of the propriety of the State's rebuttal testimony. It will be recalled that the defendant answered on cross-examination that he did not sell whiskey from the bus in which he lived. In an effort to contradict this testimony the State, on rebuttal, presented a witness who testified that he had purchased a pint of bourbon whiskey from the defendant one week prior to the tragic event from which this trial resulted.

This rebuttal testimony merely tends to secure proof of matters which are wholly irrelevant to the issue and can have no further probative value than that improperly introduced on cross-examination. The answers of a witness on cross-examination concerning matters relevant to an issue are not conclusive and may be contradicted by independent proof for the purpose of impeachment. However, it is firmly established that the answer of a witness on cross-examination as to irrelevant or collateral mat-

ters is binding on the cross-examiner and may not be contradicted. *In re Gamble,* 244 N. C. 149, 93 S. E. 2d 66; *State* v. *Messley* (Mo.), 366 S. W. 2d 390; *Devine* v. *Devine,* 29 Cal. Rept. 132; *State* v. *Oswalt,* ____ Wash. ____, 381 P. 2d 617; *Tippit* v. *State* (Okla.), 332 P. 2d 222; *State* v. *Little,* 87 Ariz. 295, 350 P. 2d 756; *Commonwealth* v. *Evans,* 190 Pa. Super. 179, 154 A. 2d 57; *People* v. *Matthews,* 18 Ill. 2d 164, 163 N. E. 2d 469; *Byomin* v. *Alvis,* 169 Ohio St. 395, 159 N. E. 2d 897; *State* v. *Gress,* 250 Minn. 337, 84 N. W. 2d 616; *Arpan* v. *United States,* 260 F. 2d 649. See also 58 Am. Jur., Witnesses, §784, page 433, and cases cited under footnote one (1) thereof; The Law of Evidence, Virginia and West Virginia, Section 43, Witnesses; Wigmore on Evidence, 3rd ed., §§ 1001, 1002.

If the prosecuting attorney introduced matters by way of cross-examination which he could not have produced independently, such matters are irrelevant and his position can not be strengthened by an additional attempt to prove these immaterial matters. It was reversible error, therefore, to permit this rebuttal testimony, the only effect of which was to attempt to prove that Simmons was engaged in the illegal sale of whiskey. As heretofore stated, this evidence could not be used to impeach the defendant as it was not relevant to the issue.

Inasmuch as the judgment below is hereby reversed and the case must go back for a new trial, we do not deem it necessary or advisable to discuss the many other assignments of error.

The judgment is reversed, the verdict is set aside and this case is remanded to the Circuit Court of Randolph County for a new trial which is here awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*