George T. **DAVIDSON**, Petitioner,

v.

Otto C. **BOLES**, Warden of the West Virginia State Penitentiary, **Respondent.**

Civ. A. No. 661–E.

United States District Court
N. D. West Virginia.

April 13, 1967.

---

John E. Busch, Jr., Elkins, W. Va., for petitioner.

George H. Mitchell, Asst. Atty. Gen., Charleston, W. Va., for respondent.

## MEMORANDUM

MAXWELL, Chief Judge.

At the time this federal habeas corpus petition was originally filed, Petitioner, George T. Davidson, was serving two consecutive indeterminate sentences of not less than one nor more than ten years following convictions in 1964 and 1965 for breaking and entering. On November 17, 1966, this Court granted relief with respect to Davidson's claim as to his 1965 conviction.[1] Having since secured a transcript of Petitioner's 1964 trial, this Court now disposes of the claims regarding the 1964 conviction.

Petitioner raises four claims for habeas corpus relief.[2] First, he claims that evidence obtained from an illegal search was introduced at trial. Second, he claims that the ownership of allegedly stolen property was not proven as laid in the indictment. Third, he complains of the prejudicial effect of the prosecutor's references to a prior "crime," unrelated to the one charged. Finally, he complains of faulty instructions given by the trial court to the jury.

The facts relevant in consideration of Davidson's first claim are contained in the trial transcript, at pages 92 to 113, where the testimony taken at a hearing in chambers on defendant's motion to suppress is reported. From this record it appears that in the early morning of May 25, 1964, Charleston police received a radio report that a breaking and entering had occurred involving three men, one of whom had been observed and identified by an eyewitness as Petitioner, George T. Davidson.

Some time later Police Officer Simmons came upon a parked car containing three men. As he approached the car to question its occupants, the car drove off. Simmons pursued in his car, radioed to other police units in the direction in which the car was travelling. The pursuit was joined by Police Officer Harkins in another car. The fast-moving car went off the road after hitting a railroad crossing. Harkins arrested the driver for reckless driving and arrested the two passengers without a specific charge. However, in questioning them, Harkins learned that one of the men was George T. Davidson, the breaking and entering suspect. By this time other police had arrived on the scene. After the three had been locked in a patrol wagon, the car, including the trunk, was searched, producing evidence of the breaking and entering.

Petitioner objects to the search without a warrant on two bases. His claim that he was illegally arrested is without merit. Since the officer discovered Davidson's identity in the course of legally arresting the driver, he then had probable cause to arrest Davidson for breaking and entering, relying on knowledge of the eyewitness identification. Davidson further contends that, even if the arrest were valid, the search without a warrant under the circumstances was not *incident* to the arrest.

---

1. This Court found Petitioner had been denied his statutory right to appeal and ordered the State either to allow a late appeal or retry Petitioner. Since then, the Court has been advised that the State has elected to retry Petitioner for the 1965 offense.

2. All four of these claims were raised on writ of error to the Supreme Court of Appeals of West Virginia, and were refused on May 24, 1965. Davidson has also exhausted his state habeas corpus remedies.

For this contention he relies on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

*Preston* involved the search of an automobile without warrant, made at a police garage after its passengers had been arrested on a vagrancy charge. The search produced evidence which the police used to obtain a confession from one of those arrested that a bank robbery was being planned. Preston and the others were convicted of conspiracy and the Supreme Court reversed, holding the search illegal and not incident to an arrest. The difficulty with *Preston* is that the Supreme Court used two alternate rationales in reversing: First, there was no pressing need to search without a warrant; second, the search was too remote in time and place from the arrest.

Discussing the first rationale, the Supreme Court said, 376 U.S. at 367, 84 S. Ct. at 883,

> The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.

Here, once Davidson and his two companions were safely locked in the patrol wagon, it is true that there was no pressing need for an immediate search.

However, the Supreme Court continued, introducing its second rationale, 376 U.S. at 367, 368, 84 S.Ct. at 883,

> But these justifications are absent where a search is *remote in time or place* from the arrest. Once an accused is under arrest and in custody, then a search *made at another place*, without a warrant, is simply not incident to an arrest. Here, *we may assume*, \* \* \* that, either because

the arrests were valid or because the police had probable cause to think the car was stolen, *the police had the right to search the car when they first came on the scene*. But this does not decide the question of the reasonableness of a search made at a later time and at another place. (Emphasis added.)

This Court notes the assumption that the *Preston* search would have been valid at the arrest scene as indicating that the remoteness of the search was the principle objection. Our conclusion is further supported by the final sentence in *Preston*, 376 U.S. at 368, 84 S.Ct. at 884,

> We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible.

On this reading of *Preston* we cannot say that the search conducted here was illegal and not incident to an arrest.

There is much support for our reading of *Preston*. See, for example, Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964); and Arwine v. Bannan, 346 F.2d 458 (6th Cir. 1965). In *Adams*, 336 F.2d at 753, it was stated,

> But, as far as we are aware, no court has yet held that a car, including its trunk, may not be searched without warrant at the time and place its occupants are placed under lawful arrest.

It should be emphasized, however, that the search here is upheld as incident to the arrest for breaking and entering.

■ In *Preston* the Supreme Court questioned whether there could ever be "articles which can be the 'fruits' or 'implements' of the crime of vagrancy." 376 U.S. at 368, 84 S.Ct. at 883.[3] And in

---

3. The recent case of Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788,

17 L.Ed.2d 730 (U.S. February 20, 1967), which seems to indicate a more permis-

United States v. Tate, 209 F.Supp. 762, 763, 765 (D. Del.1962), it was said that "there are no fruits of speeding." Here, however, once Davidson had been identified as the breaking and entering suspect, there was probable cause for his arrest and the search was legitimately incident thereto.

Petitioner's claim, that the ownership of allegedly stolen property was not proven as laid in the indictment, is two-pronged. First, he alleges that the owner of the lunchroom broken into was not Ionn*a*u, as stated in the indictment, but Ionn*o*u. Secondly, he claims that the lunchroom owner was not, in fact, the owner of the money taken from vending machines on his property. Although neither of these claims is of constitutional proportions cognizable in federal habeas corpus, since it strains credulity to argue that these variances exposed Davidson to the danger of double jeopardy or made it difficult for him to understand and defend against the offense charged, this Court has further satisfied itself that there has been no violation of West Virginia law.

■■  In support of his claim that the misnomer of the victim of the breaking and entering was a fatal variance, Petitioner cites State v. McGraw, 140 W.Va. 547, 85 S.E.2d 849 (1955), where a conviction for receiving stolen property was reversed because the victim was shown to be a George Brown and not Sam Brown as alleged in the indictment. This case is perhaps the most extreme example of the State's concern for proper identification in an indictment and clearly is not authority for reaching the same result in the case of an inconsequential misspelling. As was said in State v. Crowder, 146 W.Va. 810, 123 S.E.2d 42, at 57 (1961),

> The variance between the indictment and the proof is considered material only where the variance misleads the defendant in making his defense and exposes him to the danger of being put

in jeopardy again for the same offense.

Neither of the dangers mentioned above can seriously be alleged to have been present here.

■  Davidson also claims a fatal variance between the indictment and the proof due to the alleged misstatement of ownership of the stolen money. He alleges that the lunchroom operator, described as the owner in the indictment, had no control over money in the vending machines, not having a key to them, and that, at most, his right to commissions indicated only a contingent interest. However, a case of some vintage, State v. Heaton, 23 W.Va. 773, 781 (1883), appears to state the still current law in West Virginia, that a "special property," such as the interest held by a bailee, is sufficient ownership. Thus, the indictment appears immune from attack on this ground also.

Davidson's claim of constitutional deprivation through prejudice created by a prosecutorial reference to a prior shooting by Petitioner arises from the following situation. (Trial Transcript, pages 293–296). In an effort to follow through on Petitioner's direct testimony, in which Davidson had testified about a fight with a State's witness in order to show the witness' bias, the prosecutor asked Davidson the following question:

> You were talking about having a fight in back of the M & L Restaurant, is that the time you shot Jim Truslow?

Only after the defendant had replied in the negative did his attorney object. A bench conference was held in which defense counsel made it clear that the shooting was a completely unrelated event. After denying defendant's motion for a mistrial, the trial court instructed the jury to disregard all testimony about the shooting.

Before adverting to federal constitutional standards regarding this claim of

sive attitude toward warrantless automobile searches, also makes it clear that the vagrancy arrest was the most salient factor leading to the conclusion that the search in *Preston* was unreasonable.

prejudice, this Court inquired into West Virginia law. In that context we were met with two questions. First, was it error to permit the reference? Secondly, if it was error, did the instruction to disregard cure such error?

■ It is clear that in West Virginia reference may be made, on cross-examination, to prior convictions for the purpose of impeaching the credibility of a defendant who chooses to testify in his own behalf. State v. Blankenship, 137 W.Va. 1, 69 S.E.2d 398 (1952); State v. La Rosa, 129 W.Va. 634, 41 S.E.2d 121 (1946). But where defendants on cross-examination are asked whether they have committed particular unrelated offenses for which they have not been tried and convicted, reversible error results not only because of the violation of the privilege against self-incrimination, but also because of the prejudicial effect of such irrelevant questions. State v. Simmons, 148 W. Va. 340, 135 S.E.2d 252 (1964); State v. Foley, 128 W.Va. 166, 35 S.E.2d 854 (1945).

■ Here, of course, reference to a "shooting" did not necessarily refer to a crime; it may well have been accidental or done in self-defense. Nevertheless, such a reference to an unrelated incident would not have been proper cross-examination as questioning about an independently verifiable conviction would have been. This type of questioning was condemned in State v. Burnette, 118 W. Va. 501, 190 S.E. 905, 907–908 (1937).

■ Having determined that the questioning was error, this Court considered the effect of the trial court's instruction to disregard the testimony.

Although no identical or closely similar situation was found in the West Virginia cases, the general rule applicable here appears to be that if, despite the court's instruction to disregard, the illegal evidence was so impressive that it probably remained in the minds of the jurors and influenced their verdict, then the conviction must be reversed.

■ In applying this rule an important consideration is whether the prosecutor persisted in the improper questioning once an objection was sustained. See State v. Justice, 107 W.Va. 490, 148 S.E. 843 (1929); and State v. Morris and Johnson, 96 W.Va. 291, 122 S.E. 914 (1924). Here, as we have indicated, no further reference was made to the shooting. Also the ambiguous nature of the word "shooting" seems significant. The fact that it may have been done accidentally or innocently tends to lessen the prejudicial effect of the questioning. In view of these considerations, it seems clear that, under West Virginia law, no reversible error occurred here.

Federal Courts have been reluctant to intervene in state evidentiary matters of this type.[4] This Court cannot find that the circumstances warrant such intervention here. In our opinion, this isolated incident did not so seriously infect the proceedings as to make them fundamentally unfair or to deprive Petitioner of a fair trial.

■ Davidson's final claim regarding alleged improper jury instructions requires only brief consideration. His complaint about the giving of two State's instructions seems merely to relate to the sufficiency of the evidence

4. In a slightly different context, the Supreme Court has, quite recently, provided another example of this reluctance. In Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (Jan. 23, 1967), the Court stated:

In this area the Court has always moved with caution before striking down state procedures. It would be extravagant in the extreme to take *Jackson* [Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] as

evincing a general distrust on the part of this Court of the ability of juries to approach their task responsibly and to sort out discrete issues given to them under proper instructions by the judge in a criminal case, or as standing for the proposition that limiting instructions can never *purge the erroneous introduction of evidence* or limit evidence to its rightful purpose. (Emphasis added).

and suggests no semblance of a federal constitutional deprivation. He cites two cases for the proposition that Defendant's Instructions 5 and 7 ought to have been given. Both cases are inapposite, however, since they merely and incidently indicate approval of such instructions in cases where they were given. See State v. Brady, 104 W.Va. 523, 534, 140 S.E. 546, 551 (1927); and State v. Williams, 98 W.Va. 458, 468, 127 S.E. 320, 324 (1925). In addition, the substance of the refused instructions was given in other instructions. See Defendant's Instructions 6 and 8 (Trial Transcript, pages 345–348).

Having fully explored each of Petitioner's claims for habeas corpus relief as to his 1964 conviction, the Court finds them without merit. As indicated above, this Court has granted relief as to Davidson's claim with regard to his 1965 conviction, but the State has now elected to retry him for that offense. Accordingly, the Court now directs that an order be entered dismissing the petition and retiring the case from the docket, subject to its being reopened in the event the State fails to pursue to conclusion its election to retry Petitioner for the 1965 offense.